**UNITED STATES of America, Appellee,**

v.

**William BEVERLY; William Pritchett, also known as O; and Reginald Brown, Defendants,**

**Charles Tyrone White, also known as NFN Black, and Dana Foster, Defendants–Appellants.**

**Nos. 1592, 1593, Dockets 93–1016(L), 93–1038.**

United States Court of Appeals, Second Circuit.

Argued May 27, 1993.

Decided Sept. 23, 1993.

John J. Doherty, Cohoes, NY, for defendant-appellant White.

Lee D. Greenstein, Albany, NY, for defendant-appellant Foster.

Bernard J. Malone, Albany, NY, Asst. U.S. Atty. for the N.D.N.Y. (Gary L. Sharpe, U.S. Atty. for the N.D.N.Y., Joshua W. Nesbitt, Asst. U.S. Atty., on the brief), for plaintiff-appellee.

Before: NEWMAN, Chief Judge, FEINBERG, Circuit Judge, and KELLEHER, Senior District Judge.*

KELLEHER, Senior District Judge:

Charles Tyrone White and Dana Foster appeal from the judgments of conviction and sentences entered in the United States District Court for the Northern District of New York, Lee P. Gagliardi, *Judge*, following their trial before a jury on charges stemming from their participation in a conspiracy to sell cocaine base (crack) in Albany, New York. Specifically, White appeals from his conviction and sentence for: conspiracy to possess with intent to distribute and to distribute cocaine base, possession with intent to distribute cocaine base, and use of a firearm during and in relation to a drug trafficking crime. Foster appeals from his conviction and sentence for conspiracy to possess with intent to distribute and to distribute cocaine base and for being a felon in possession of a firearm.

Appellants, respectively, attack their convictions on grounds the district court erred in: denying Foster's motion for severance; restricting both appellants' ability to cross-examine some government witnesses; admitting a post-arraignment statement made by Foster; allowing the government to impeach White's testimony by eliciting testimony of prior incidents in which he had been involved with guns; denying Foster's request for a continuance just prior to the close of trial;

and reading back testimony requested by the jury.

They attack their sentences on the ground the district court improperly used the testimony of two coconspirators as the basis for its calculation of the amount of crack attributable to them for sentencing purposes.

For the reasons stated below, we affirm.

## Background

Foster and White were indicted together with William Beverly, William Pritchett, and Reginald Brown on charges of: (1) conspiracy to possess with intent to distribute and to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(iii) and 21 U.S.C. § 846; (2) possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1) and 18 U.S.C. § 2; (3) unlawful use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) & (2); (4) as to Beverly, Pritchett, and Foster, being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2); and (5) as to Pritchett, Beverly, and White, employing minors to distribute controlled substances, in violation of 21 U.S.C. § 861 and 18 U.S.C. § 2.[1] The charges are based on the five named defendants' participation in a crack-selling organization led by Beverly and Pritchett in Albany, New York.

Beverly and Pritchett arrived in Albany in December 1990 and began selling crack. They soon began to recruit others, including Brown, to join them in selling crack. Beverly and Pritchett dubbed their growing gang the Boston Boys.[2]

Sometime in late February or early March of 1991, White and Foster joined Beverly and Pritchett's gang in Albany. In connection with their crack dealing business, the Boston Boys purchased at least two handguns, which they used to protect themselves and their drugs: a Taurus .357 magnum revolver, Model 66, with a six inch barrel; and a Colt

---

* Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

1. The charges of employing minors to distribute controlled substances were dismissed on the government's motion during the trial.

2. Beverly, Pritchett, White, and Foster all are from the Boston area in Massachusetts and knew each other for years prior to their activities in Albany.

Trooper .357 magnum revolver with a six inch barrel.

In March 1991, as a result of several shooting incidents involving White, federal and state law enforcement officers in the Albany area began to investigate the Boston Boys.

On April 2, 1991, Beverly and Brown were arrested. On April 3, 1991, after attempts to elude the police, Pritchett and White were arrested along with Carmen Johnson, Greg Roberson, and Luther Harris, a fifteen year-old who was carrying 96 small plastic bags of crack. Police later recovered the two .357 magnums from Harris's apartment.

Foster fled Albany after hearing of Beverly's and Brown's arrest. He was arrested in Cambridge, Massachusetts on July 11, 1991. On July 15, 1991, Agent John Morgan of the Bureau of Alcohol, Tobacco, and Firearms interviewed Foster in Boston. This interview occurred in the absence of counsel, while Foster was in custody, and after he had requested counsel at his arraignment. During the interview, Foster identified one Donnell Hanner from a photograph as a man who had once offered to sell him a gun on Lark Street in Albany. Foster stated that, when approached by Hanner, he told Hanner he was not interested in buying the gun but pointed Hanner in the direction of someone Foster thought might be interested in buying it. Foster did not identify to Morgan the identity of the person to whom he directed Hanner.

Beverly, Pritchett, and Brown entered into plea and cooperation agreements with the government. Foster and White did not.

In September, 1992, Foster and White were tried jointly before a jury. At trial, law enforcement officers, Beverly, Pritchett, Brown, and other unindicted coconspirators and associates testified against Foster and White. Agent Morgan testified to Foster's post-arraignment statement regarding Hanner's offer to sell a gun. Both Foster and White presented evidence including their own testimony.

White was convicted of conspiracy, possession with intent to distribute, and use of a firearm during and in relation to a drug trafficking crime. Foster was convicted of conspiracy and being a felon in possession of a firearm. The jury failed to reach a verdict for Foster on the charges of possession with intent to distribute and use of a firearm during and in relation to a drug trafficking crime.

Both Foster and White were sentenced on December 23, 1992. At the sentencing hearing, they disputed the presentence report's and the government's estimation of cocaine base attributable to them for sentencing purposes. The district court adopted the estimation contained in the presentence report which was taken directly from the testimony of Beverly and Pritchett.

White was sentenced to: concurrent 210–month terms of imprisonment on the conspiracy and possession counts; concurrent mandatory five-year terms of imprisonment on the firearms counts, to run consecutively to the 210–month sentences; and consecutive four-year terms of supervised release on the conspiracy and possession counts. Foster was sentenced to: a 235–month term of imprisonment on the conspiracy count; a ten-year term of imprisonment on the firearm count, to run concurrently with the 235–month term; and concurrent five-year terms of supervised release on both counts.

Both Foster and White filed timely notices of appeal.

### Discussion

#### I. *Denial of Foster's Motion for Severance*

Appellants claim that because their defenses were antagonistic to each other, the district court abused its discretion in denying Foster's motion for severance.

■■■ There is a general preference for joint trial of persons indicted together, as Foster and White were in this case. *Zafiro v. United States,* — U.S. —, —, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993). The decision whether to grant a motion to sever rests in the sound discretion of the trial court. *Id.* at —, 113 S.Ct. at 938; *United States v. Boyd,* 610 F.2d 521, 525 (8th Cir. 1979). Even if prejudice is shown, severance is not required. *Zafiro,* — U.S. at —, 113 S.Ct. at 938. And even when co-defen-

dants have conflicting or antagonistic defenses, severance is not required. *Id.* at ——— ———, 113 S.Ct. at 937–38.

▮ · Foster argues he was unduly prejudiced by the denial of his motion for severance in that, as a result of being tried jointly with White, he was deprived of the opportunity to cross-examine Beverly, Pritchett, and Brown regarding the paucity of references to Foster in several of their statements to the police following their arrests. Had he been granted severance, Foster argues, he would have been able to contrast the frequent mention of White in conjunction with guns in the statements of Beverly, Pritchett, ·and Brown with the comparatively infrequent mention of Foster. It is questionable whether evidence of the frequency with which White was mentioned in those statements would be relevant, admissible evidence in a severed Foster trial. But we need not resolve that question as Foster's ability to present his defense was not prejudiced by the joint trial.

In fact, Foster's counsel cross-examined Beverly, Pritchett, and Brown extensively regarding the limited mention they made of Foster in their post-arrest statements and the supposed inconsistency of this· with their testimony at trial. In summation, Foster's counsel argued at length his theory that the relative absence of Foster from Beverly's, Pritchett's, and Brown's statements to police was inconsistent with their testimony at trial and demonstrated that Foster was neither involved in the conspiracy nor connected to the guns underlying the firearms charges. Moreover, as a result of White's opening the door to impeachment evidence regarding his extensive involvement with guns, the contrast Foster sought to draw emerged during the course of the trial.

Because Foster's and White's defenses were not truly antagonistic and Foster has failed to demonstrate any prejudice resulting from the denial of severance, we hold the district court did not abuse its discretion in denying Foster's motion for severance.

## II. The District Court's Limitation of Appellants' Cross–Examination

▮ Appellants contend that the district judge deprived them of the benefit of the Confrontation Clause of the Sixth Amendment by imposing excessive limitations on their cross-examination of government witnesses. This contention is meritless.

. A district judge has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on … cross-examination based on concerns about, among other things, … interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *United States v. Maldonado–Rivera,* 922 F.2d 934, 956 (2d Cir.1990). We will not reverse the district judge's decision to restrict cross-examination unless that decision constitutes an abuse of the judge's broad discretion. *United States v. Tillem,* 906 F.2d 814, 827 (2d Cir.1990).

The record reveals Foster and White had ample opportunity to cross-examine the witnesses against them. The trial judge did no more than restrict improper cross-examination in the manner any prudent trial judge would, properly sustaining objections on grounds of irrelevancy, redundancy, and form. Indeed, it appears from the record that the trial judge exercised extraordinary leniency in the face of persistent improper cross-examination and commentary on the part of Foster's counsel.

We conclude the limitations imposed by the district court. on Foster's and White's cross-examination of government witnesses did not violate their right of confrontation under the Sixth Amendment.

## III. Evidentiary Rulings

▮ In general, we will not overturn the district court's decision to admit or reject evidence absent an abuse of discretion. *United States v. Esdaille,* 769 F.2d 104, 108 (2d Cir.1985); *United States v. Moon,* 718 F.2d 1210, 1232 (2d Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984).

### A. Admission of Foster's Post–Arraignment Statement

▮ Appellants contend Foster's inculpatory post-arrest statement to Morgan was

admitted at trial in violation of his right to counsel under *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The government concedes admission of the statement was erroneous. However, the government contends Foster forfeited his Sixth Amendment objection to admission of the statement because he failed to make continuing objections on that ground after his motion to suppress the statement was denied. Moreover, the government continues, because admission of the statement neither prejudiced Foster nor otherwise affected the integrity of the trial, it cannot serve as grounds for reversal under the plain error doctrine. *See United States v. Olano,* ___ U.S. ___, ___, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993).

The government is mistaken in its contention of forfeiture. By expressly moving the district court for suppression under *Jackson* in his omnibus motion, Foster preserved his Sixth Amendment objection for review. Consequently, the plain error doctrine is inapposite.

■ Nonetheless, upon review of the record below we conclude beyond a reasonable doubt that the erroneous admission of this statement did not contribute to Foster's conviction. "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

The testimony of Beverly, Pritchett, Brown and other witnesses went far beyond the post-arrest statement in establishing Foster's guilt on both the conspiracy and the possession of firearm charges. Foster argues these witnesses could not have been credited by the jury, but the record does not support his argument. In order to convict Foster of the conspiracy charge, the jury had to have credited the testimony of these witnesses. Moreover, the testimony of all these witnesses strongly supported the charge of being a felon in possession of a firearm. In contrast, Foster's post-arrest statement to Morgan is at best equivocal evidence, showing only some awareness of a firearm sale.

We conclude that, although the district court erred in admitting Foster's post-arrest statement, the error was harmless beyond a reasonable doubt.

**B. Impeachment of White's Testimony Regarding Guns**

■ White contends the district court erred in admitting evidence that he had committed shootings in Albany and had prior experience with guns as well. The government elicited this evidence on cross-examination and rebuttal to impeach White's testimony that he had no significant familiarity with guns and never possessed any gun in Albany. White argues the government's impeachment evidence ran afoul of Federal Rules of Evidence 404(b), which proscribes evidence of prior bad acts "to prove the character of a person in order to show action in conformity therewith," and 608(b) because the shooting incidents were the subject of pending criminal charges.

White's invocation of rules 404(b) and 608(b) is misplaced. The government's questioning arose in the form of impeachment of specific falsehoods, not as an attack on his general character for truthfulness, Fed. R.Evid. 608(b), nor as an attempt to prove his bad character in order to show he acted in conformity therewith, Fed.R.Evid. 404(b).

■ "Central to the proper operation of the adversary system is the notion that 'when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth.'" *United States v. Garcia,* 936 F.2d 648, 653 (2d Cir.1991) (quoting *United States v. Havens,* 446 U.S. 620, 626–27, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980)). Once a defendant has put certain activity in issue by offering innocent explanations for or denying wrongdoing, the government is entitled to rebut by showing that the defendant has lied. *United States v. Mills,* 895 F.2d 897, 907 (2d Cir.), *cert. denied,* 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 541 (1990). Where a defendant testifies on direct about a specific fact, the prosecution is entitled to prove on cross-examination that he lied as to that fact. *Garcia,* 936 F.2d at 653. The same holds

true for defendant's false statements on cross-examination. *United States v. Atherton,* 936 F.2d 728, 734 (2d Cir.1991). Finally, the government's opportunity to impeach the defendant's credibility once he has taken the stand includes the opportunity to use evidence that it was barred from using on its direct case. *Atherton,* 936 F.2d at 734.

On direct and cross-examination, White denied ever possessing any gun in Albany. When asked if he had ever had any guns, White testified that in the past when he was working as a security guard he was taken to a firing range to be trained so he could carry a gun, but that he never completed the training or carried a gun at that job. White also testified he was not in Albany on March 28 and 29, 1991.

On cross-examination, the government questioned White regarding several prior incidents in which he allegedly possessed and used firearms. Through cross-examination and on rebuttal, the government introduced evidence White committed two shootings in Albany on March 28 and March 29, 1991. At the time of trial, state charges against White arising from these shootings were pending.

Prior to the commencement of trial the district court had ruled evidence of the shootings inadmissible on the government's direct case. Once White testified falsely, however, the district court allowed the government to use evidence of the prior shootings to impeach White's testimony because White had "got across to the jury he had nothing to do with any guns" and thereby "opened the door."

■ We agree, for the most part, that White opened the door to this impeachment by stating on direct that: (1) he never possessed any gun in Albany, (2) he had no familiarity with guns other than some unfinished training for a security job in the past, and (3) he was not in Albany on March 28 and 29, 1991. Once White testified that he had no familiarity with guns other than some uncompleted training at a past job security guard, the government was entitled to impeach his testimony by establishing on cross-examination and rebuttal that, in fact, he was familiar with guns and had possessed and fired guns in Albany. *See Garcia,* 936 F.2d

at 654; *United States v. Mills,* 895 F.2d 897, 907 (2d Cir.), *cert. denied,* 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 541 (1990); *United States v. Blake,* 941 F.2d 334, 338–39 (5th Cir.1991). The same is true with regard to White's claims that he was in Long Island City rather than Albany on March 28 and 29, 1991.

While the government was entitled to impeach White's false testimony, we note with distress that it overreached by including in its impeachment evidence the facts that White had fired guns in Albany into a house, at a woman, and into the leg of a man. Mention of those details was unnecessary to impeach White's false testimony. And their inclusion in the government's cross-examination and rebuttal was fraught with the threat of unduly prejudicing the jury against White.

It might have been better for impeachment evidence to have been limited to showing White's presence in Albany on March 28 and 29, 1991 and the fact that he possessed and used guns in Albany. This would have limited presentation to the jury of marginally extraneous details concerning who or what White's targets were when he fired guns.

Nonetheless, White testified on direct in a manner calculated to portray himself as a law-abiding musical performer who had nothing to do with guns. Accordingly, we cannot say the district court abused its discretion in allowing the government to elicit evidence of the shootings in order to discredit White's self-depiction. Certainly, the evidence of the shootings exposed White's lack of candor regarding his whereabouts on March 28 and 29, 1991 and his familiarity with and use of guns. Under the circumstances, the district court did not abuse its discretion in allowing the government to elicit that evidence. *Cf., Garcia,* 936 F.2d at 653–54 (similar scenario, defendant's familiarity with and prior use of cocaine at issue).

■ We conclude that any error which might have resulted from the district court's admission of the details regarding the use to which White put firearms was harmless in view of the ample evidence establishing White's guilt. In addition, his denials were impeached by other indisputably proper evi-

dence, such as the testimony of his own witness, Greg Roberson, as to White's whereabouts in the hours immediately preceding his arrest on April 3, 1991 and the testimony of Demetria Andrews.

## IV. *Denial of Foster's Request for Continuance*

 Just prior to the close of trial, Foster requested a continuance because he did not have two of his witnesses present to testify. The district court denied this request. On appeal, Foster contends the district court abused its discretion in denying his request for a continuance. This claim is meritless.

A trial judge has broad discretion in regulating the timetable for trial. *United States v. Bein,* 728 F.2d 107, 114 (2d Cir.1984). A district court's decisions regarding the timetable for trial will not be reversed absent an abuse of discretion. *Id.* at 114. To demonstrate an abuse of this discretion, a defendant must demonstrate arbitrary action that substantially impaired the defense. *Id.* In this case, Foster fails on both scores.

In his defense Foster presented the testimony of nine witnesses, including his own. The record reveals the trial judge's denial of the continuance was based on his concern with the court's calendar, the effect of the delay on other litigants, and Foster's failure to offer any substantial reason why these two witnesses could not be in attendance when they were supposed to testify. Both witnesses were present on the preceding day of trial.

Foster's argument that the outcome of this case might well have been affected by the testimony of his two uncalled witnesses is belied by the record. The testimony Foster expected to elicit from these witnesses would not have strengthened Foster's defense. The testimony of both would have been cumulative with that of his other witnesses. And one witness's testimony was proffered only to protect against the government raising questions in summation about her not having been called. The government offered to stipulate that it would not mention the witness's absence in summation, and Foster stated that this was a satisfactory resolution of the dilemma. As the government abided by the terms of its stipulation not to mention the latter witness's absence, Foster cannot now assert he was prejudiced by being deprived of her testimony.

Thus, we conclude that the trial judge acted within his sound discretion in denying Foster's request for a continuance at the close of trial.

## V. *Readback of Testimony*

 Foster contends the district court erred in allowing the testimony of Demetria Andrews to be read back in response to a request from the jury to "re-hear" her testimony regarding Foster's "role with drugs and gun possession." Foster argues the reading back of her testimony prejudiced him by suggesting his mere presence at the scene was criminal. We disagree.

A trial judge has broad discretion in deciding whether to accommodate jury requests to have testimony read back to them during deliberations. *United States v. Holmes,* 863 F.2d 4, 5 (2d Cir.1988). We have consistently held that in responding to a specific request from the jury, "the better course of action is for the district court to allow the reading of the testimony requested by the jury. . . ." *Id.* at 5. Here, the district court followed exactly this recommended course.

 Moreover, the jury was clearly instructed that mere presence and association does not establish proof of the existence of a conspiracy, or of any other crime in the indictment. The record below betrays no indication the jurors failed to heed this instruction, and it is axiomatic that jurors are presumed to follow their instructions. *See Zafiro,* —— U.S. at ——, 113 S.Ct. at 939. We conclude the district court acted well within its discretion in reading back the testimony requested by the jury.

## VI. *District Court's Finding Regarding Amount of Cocaine Base Attributable To Foster and White for Sentencing Purposes*

 Foster and White contend the district court erred in calculating the amount of crack properly attributable to them for sentencing purposes. Under the Sentencing Guidelines, in a drug trafficking conspiracy such as the one in this case, the district court

must examine the evidence and approximate the quantity of the drug applicable to the calculation of the base offense level. *See* U.S.S.G. § 2D1.4, commentary note 2. For each individual conspirator, the relevant conduct and thus the applicable quantity of the drug includes all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity. U.S.S.G. §§ 1B1.3(a)(1)(B), 2D1.4. Appellants do not dispute that the total amount of crack sold by the Boston Boys during the time they were found to be members was properly viewed as reasonably foreseeable activity in furtherance of the conspiracy.

Rather, they argue the district court erred in crediting the testimony of Beverly and Pritchett regarding the quantity of crack sold during the time Foster and White were members of the Boston Boys. Because there were *inconsistencies between the testimony* to the amount of crack sold over the course of the conspiracy and the testimony to the amount of profit made over the same period, Appellants argue the district court was not permitted to find that the larger of the possible quantities was more accurate. This contention must fail.

Facts in support of a sentencing calculation need only be proven by a preponderance of the evidence, and the district court's findings will not be disturbed unless clearly erroneous. *United States v. Beaulieau,* 959 F.2d 375, 378–79 (2d Cir.1992). Thus, Appellants bear a heavy burden in challenging the district court's factual findings, *United States v. Pimentel,* 932 F.2d 1029, 1031 (2d Cir. 1991). A district court's factual findings based on the testimony of witnesses is entitled to special deference. We have recognized that assessing the credibility of witnesses is distinctly the province of the district court, and we will not lightly overturn such assessments. *Maldonado–Rivera,* 922 F.2d at 972.

Here, the evidence of the quantity of crack sold by the conspirators at different times during the conspiracy was the testimony of the conspiracy's two leaders, Beverly and Pritchett. They testified that the gang sold between twenty and twenty-five ounces of crack during March 1991. As Appellants note, Beverly's and Pritchett's testimony re-

garding the amount of profit per ounce and the total profit made over the course of the conspiracy does not match up with their testimony regarding the quantity sold. The district court chose to credit Beverly's and Pritchett's testimony as to the amount sold and based its calculation of the attributable quantity of crack directly on that estimation. We are in no position to second guess the district court's weighing of the credibility of different parts of Beverly's and Pritchett's testimony.

The inconsistency pointed out by Appellants does not lead to the conclusion that Beverly's and Pritchett's testimony was not credible. Rather, it gives rise to two possible, competing views: one based directly on the testimony to the quantity of crack sold, the other derived from the testimony regarding profits made. "Where there are two permissible views of the evidence, the [district] court's choice between them cannot be deemed clearly erroneous." *Maldonado–Rivera,* 922 F.2d at 972. Thus, we cannot say the district court's calculation of the amount of crack attributable to Foster and White for sentencing purposes was clearly erroneous.

### Conclusion

For the reasons set forth above, the judgments of the district court are AFFIRMED.