101 F.3d 682
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Michael H. ALDI, Defendant-Appellant,
Joseph A. Franco, Defendant.
 No. 95-1446(L).
 United States Court of Appeals, Second Circuit.
 April 22, 1996.
 
 1
 APPEARING FOR APPELLANT: David T. Grudberg, New Haven, CT.
 
 
 2
 APPEARING FOR APPELLEE:Ronald S. Apter, Hartford, CT.
 
 
 3
 D.Conn.
 
 
 4
 AFFIRMED.
 
 
 5
 Before OAKES, PARKER, Circuit Judges, and KNAPP,* District Judge.
 
 
 6
 This cause came to be heard on the transcript of record from the United States District Court for the District of Connecticut and was argued by counsel for appellant and by counsel for appellee.
 
 
 7
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 8
 Michael Aldi appeals his conviction of conspiracy to solicit corrupt payments in violation of 18 U.S.C. § 371, soliciting corrupt payments in violation of 18 U.S.C. § 666(a)(1)(B), and filing materially false tax returns in violation of 26 U.S.C. § 7206(1) (collectively, the corruption conviction). If the corruption conviction is reversed, Aldi appeals his sentence for making false statements in bank loan applications in violation of 18 U.S.C. § 1014 (the bank fraud conviction).
 
 
 9
 Aldi served as City Manager of the City of Meriden, CT from 1988 to 1993. He and Joseph Franco, the City Engineer, were tried for conspiring to solicit and accept bribes. On April 24, 1995, Aldi was convicted on all seven counts of the corruption indictment. Franco was acquitted of all three counts of his corruption indictment. Aldi was separately indicted for bank fraud. On June 5, 1995, Aldi pled guilty to Count Four of the bank fraud indictment.
 
 
 10
 The corruption and bank fraud convictions were consolidated for sentencing. On July 21, 1995, Aldi was sentenced to forty-one months and ordered to make restitution to the defrauded banks in the amount of $437,904.
 
 
 11
 Between 1989 and 1991, Aldi received $24,000 in illegal cash payments, and all-expense paid trips to a New York Jets football game and the Super Bowl in New Orleans. Aldi was given these payments by Sebastian Amenta of the Maguire Group, an engineering company. In return, Aldi awarded contracts to the Maguire Group in violation of city procedures for selecting contractors.
 
 
 12
 At trial, Aldi informed the court that he intended to testify on his own behalf. Aldi argued that the Government should not be allowed to question him about the bank fraud because such questioning would require him to waive his Fifth Amendment privilege against self-incrimination in violation of Rule 608(b) of the Federal Rules of Evidence. He argued that he should not be required to assert the Fifth Amendment in the presence of the jury.
 
 
 13
 The Government argued that by testifying in his own behalf the defendant chose to place to his credibility at issue, opening the door to questioning about specific instances probative of his character for truthfulness. The Government further argued that if Aldi chose to invoke the Fifth Amendment, he should be required to do so in front of the jury, which should not be permitted to consider his invocation of the privilege as evidence of guilt.
 
 
 14
 The district court ruled that the Government was entitled to question Aldi about the false loan applications, even though they were the subject of a pending indictment. The court limited the Government's questioning to go only to "truth and veracity and not to some general allegation that [Aldi is] a bad person."
 
 
 15
 On cross-examination, the Government questioned Aldi about his profligate spending, unexplained cash in his checking account, the accuracy of his statements in land records, and the accuracy of his tax returns also used to obtain the loans. The Government suggested that Aldi used false valuations in his land records to increase fraudulently his creditworthiness when applying for the bank loans. The Government questioned the defendant about misstatements and omissions in the personal financial statements that he filed to obtain the bank loans. Aldi did not invoke the Fifth Amendment on the stand.
 
 
 16
 On appeal both sides make essentially the same arguments they made below. The Government argues additionally that Aldi opened the door by putting his character for lawfulness at issue, and that any error was harmless. We do not reach these arguments. Nor do we reach Aldi's arguments regarding the adequacy of the district court's procedure for preserving Aldi's Fifth Amendment privilege against self-incrimination, since we find that Aldi waived that privilege.
 
 
 17
 We reach only two of the Government's arguments: Aldi opened the door to cross-examination regarding the bank fraud because on direct examination he (1) painted a self-portrait of financial health, and (2) discussed the bank loans themselves.[1]
 
 
 18
 The Government clearly did not run afoul of Rule 608(b) because its questions about the bank loans were relevant to Aldi's testimony that he was earning a good income. The questions countered Aldi's inference that he did not have a strong financial incentive to solicit bribes.
 
 Rule 608(b) provides:
 
 19
 ... Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility ... may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
 
 
 20
 The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.
 
 
 21
 Fed.R.Evid. 608(b) (emphasis added). Under Rule 608(b), the accused waives the privilege against self-incrimination when, as Aldi did, the accused testifies on direct examination on matters that permit cross-examination for a relevant purpose other than to impeach credibility. See also Fed.R.Evid. 611(b) ("Scope of cross-examination. Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of its discretion, permit inquiry into additional matters as if on direct examination.").
 
 
 22
 While Aldi acknowledged he had an extravagant lifestyle, he testified on direct (at some length) that he was making a "good income." This testimony created an inference that Aldi did not need to solicit bribes in order to maintain his lifestyle. By doing so, Aldi opened the door to questions that he submitted fraudulent loan applications since they suggest his financial situation was less secure than he indicated. This questioning went to show Aldi's motive in soliciting bribes, and thus did not solely serve to undermine his credibility. Consequently, it is not prohibited by Rule 608(b).
 
 
 23
 Furthermore, Aldi stated that he had several outstanding bank loans. Aldi testified on direct regarding one of the loans that was the subject of the bank fraud charges, the loan from Century Bank, stating that he used the $7,000 loan to pay bills and to help his nephew's video business. By including the bank loans as part of his financial self-portrait, Aldi put the loan applications squarely at issue.
 
 
 24
 This conclusion directly follows the reasoning this court employed in United States v. Beverly, 5 F.3d 633 (2d Cir.1993). In Beverly, the defendant appealed his conviction for use of a firearm during a drug trafficking crime in Albany. At trial, the defendant testified on direct that he had never possessed a firearm in Albany, and that he had almost no familiarity with guns. 5 F.3d at 640. The government impeached the defendant by asking him about pending state charges for prior shootings.
 
 
 25
 This court held that the defendant's testimony opened the door: "The government's questioning arose in the form of impeachment of specific falsehoods, not as an attack on his general character for truthfulness, Fed.R.Evid. 608(b)...." 5 F.3d at 639. By the same reasoning, the government's questioning about the bank fraud impeached Aldi's specific depiction of his finances and consequently did not violate Rule 608(b).
 
 
 26
 For this court to hold otherwise would lead to perverse results:
 
 
 27
 The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry. Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he himself has put in dispute. It would make the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.
 
 
 28
 Brown v. United States, 356 U.S. 148, 155-56 (1958); see Jenkins v. Anderson, 447 U.S. 231, 237-38 (1980) (citing Brown ).
 
 
 29
 Since we affirm the corruption conviction, we also affirm the bank fraud sentence.
 
 
 30
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The appellee need not rely on arguments it made below. Smith v. Phillips, 455 U.S. 209, 215 n. 6 (1982); Dandridge v. Williams, 397 U.S. 471, 475 n. 6 (1970)