23-6626(L)
*United States v. Elias*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of October, two thousand twenty-five.

PRESENT:
GERARD E. LYNCH,
BETH ROBINSON,
ALISON J. NATHAN,
*Circuit Judges.*

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                                Nos.   23-6626(L),
                                                                              23-6627(CON)

MATTHEW ELIAS, AKA HEDDIS, LATIFF THOMPSON, AKA LABANGA,

*Defendants-Appellants,*

SHAMIEK HYTMIAH, AKA SHA-BALLA, CONSTANTIN CHEESE, AKA CONS, DESMOND MURCHISON, AKA DEZ, ANDRE BARNABY, AKA GOONIE DRE, BRANDON DARBY, AKA BARRACK, ANTONIO DAVIS, AKA BIG BLOOD, TYQUAN HENDERSON, AKA GUN PLAY, MICHAEL MILES, AKA MENACE, AVERY MITCHELL, AKA SLAV, NAHJUAN PERRY, AKA NAS, PIERRE RAYMOND, AKA LEEKY, JAMES ROBERSON, AKA LITTLES, SHAWN SILVERA, AKA DUM OUT, SHAMEL SIMPKINS, AKA SHA BANG, RASHAWN SMITH, AKA SHAWN, KIMBERLY THOMPSON, AKA KIMMY, LAWRENCE WOODS, AKA LAZO, KAHMEL GRANT, AKA ORNELLY,

*Defendants.*\*

_____

| | |
|---|---|
| FOR APPELLEE: | DANA REHNQUIST, Assistant United States Attorney (Anthony Bagnuola, Assistant United States Attorney, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY. |
| FOR DEFENDANT-APPELLANT ELIAS: | JEREMY GUTMAN, New York, NY. |
| FOR DEFENDANT-APPELLANT THOMPSON: | PAUL SKIP LAISURE, Garden City, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Garaufis, *Judge*).

---

\* The Clerk's office is respectfully directed to amend the caption as reflected above.

2

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that, for the reasons set forth in this order and in the opinion filed simultaneously with it, the judgments against Matthew Elias and Latiff Thompson entered on June 7, 2023, are **AFFIRMED IN PART AND VACATED IN PART,** and the case is **REMANDED** to the district court.

A jury convicted Defendants-Appellants Matthew Elias and Latiff Thompson of Hobbs Act robbery, 18 U.S.C. §§ 1951(a), 2, and the unlawful use of a firearm, *id.* §§ 924(c), 2. Their charges and convictions were the result of their involvement in robbing a marijuana stash house in September 2017. Seven people participated in the robbery; Elias drove one of two getaway cars, and Thompson was one of four people involved in entering the stash house and taking marijuana, cash, and a gun from inside.

In this summary order, we resolve both Defendants' challenges to their convictions and sentences, with the exception of Elias's challenge to his order of forfeiture, which we resolve in a published opinion also issued today. We refer the parties to the factual overview in that opinion, which we supplement only as necessary to explain our decision in this summary order. We otherwise assume

the parties' familiarity with the underlying facts, procedural history, and arguments on appeal.

### I. Hobbs Act Robbery and 18 U.S.C. § 924(c)

Thompson and Elias both challenge the district court's denial of their respective motions for judgment of acquittal on the § 924(c) charges pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29") because they contend that the predicate offense, Hobbs Act robbery, is not a crime of violence under § 924(c).[1] They rely on *United States v. Taylor*, in which the Supreme Court held that *attempted* Hobbs Act robbery is not a proper predicate for a § 924(c)(1)(A) conviction because proof of attempted Hobbs Act robbery does not necessarily require proof that the defendant "used, attempted to use, or threatened to use force." 596 U.S. 845, 852 (2022). Defendants contend the same is true of substantive Hobbs Act robbery because a person who threatens *self*-harm at gunpoint to extort a friend or relative would violate the Hobbs Act without threatening force against "another." Thompson Br. 36 (quoting 18 U.S.C. § 924(c)(3)(A)).

We review the denial of a Rule 29 motion for judgment of acquittal without deference to the district court's reasoning. *See United States v. Persico*, 645 F.3d 85,

---

[1] Elias joined all of Thompson's arguments to the extent they apply to both cases.

104 (2d Cir. 2011).  Our cases squarely foreclose Defendants' argument.  As relevant here, § 924(c) prohibits using or carrying a firearm "during and in relation to any crime of violence," 18 U.S.C. § 924(c)(1)(A), which is in turn defined as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," *id.* § 924(c)(3)(A).

We have held, *after* the Supreme Court's decision in *Taylor*, that "nothing in *Taylor[]* . . . undermines this Court's settled understanding that completed Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A)." *United States v. McCoy*, 58 F.4th 72, 74 (2d Cir. 2023).[2]  We reaffirmed that holding in *United States v. Barrett* in the face of the very argument defendants make here. 102 F.4th 60, 81 (2024) ("[The defendant] hypothesizes a defendant convicted of Hobbs Act robbery for taking or obtaining property by threatening harm to himself.").  We concluded we were bound by our decision in *McCoy*.  *Id.* at 82–83. We conclude the same here.

---

[2]  In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

## II.    Sufficiency of Evidence as to Elias's § 924(c) Conviction

Elias contends the district court erred in denying his Rule 29 motion with respect to his § 924(c) conviction because the evidence was insufficient to show that he had "*advance* knowledge" that a confederate would use or carry a gun in the stash house robbery, as necessary to sustain his conviction under an aiding and abetting theory of liability.  Elias Br. at 17 (quoting *Rosemond v. United States*, 572 U.S. 65, 81–82 (2014)) (emphasis added).

We review the district court's determination as to the sufficiency of the evidence without deference to the district court.  *United States v. Laurent*, 33 F.4th 63, 75 (2d Cir. 2022).  And "we view the evidence in the light most favorable to the government" and will uphold the conviction "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.*

There is sufficient evidence here that Elias knew that a confederate would be carrying a gun at the robbery.  A confederate, Shamiek Hytmiah, testified that Elias was present at a planning meeting where two other participants lifted up their shirts to show the group that they were carrying guns.  That evidence would allow a rational factfinder to conclude beyond a reasonable doubt that Elias had "advance knowledge that a confederate would use or carry a gun" during the

robbery. *Rosemond*, 572 U.S. at 67. It makes no difference that Elias testified differently or that Hytmiah was not certain whether Elias was watching when the others showed their guns. Hytmiah testified that nothing loud or distracting was happening at the time. The jury could therefore conclude from Hytmiah's testimony that Elias saw that two confederates were carrying guns before he drove them to the scene of the robbery. *See Laurent*, 33 F.4th at 75 (noting that we defer to the jury's assessment of witness credibility and the weight of competing evidence).

## III. Evidentiary Rulings

We review a district court's evidentiary rulings for abuse of discretion and will disturb an evidentiary ruling only where the decision to admit or exclude evidence was "manifestly erroneous." *United States v. McPartland*, 81 F.4th 101, 114 (2d Cir. 2023). This is especially true for rulings under Federal Rule of Evidence 403, when a district court must weigh the "relevancy and unfair prejudice of proffered evidence," because the district court "sees the witnesses, the parties, the jurors, and the attorneys, and is thus in a superior position to evaluate the likely impact of the evidence." *Id.*

"Even if an evidentiary ruling is manifestly erroneous, we will affirm—and the defendant is not entitled to a new trial—if the error was harmless." *United States v. Kelly*, 128 F.4th 387, 424 (2d Cir. 2025); *see also* Fed. R. Crim. P. 52(a). "The strength of the government's case is the most critical factor in assessing whether error was harmless." *United States v. McCallum*, 584 F.3d 471, 478 (2d Cir. 2009). We also consider "the prosecutor's conduct with respect to the improperly admitted evidence; [] the importance of the wrongly admitted evidence; and [] whether such evidence was cumulative of other properly admitted evidence." *Id.*

### A. Social Media Posts Suggesting Elias's Gang Affiliation

Elias challenges the district court's decision to admit social media images of Elias holding up hand signs purportedly associated with gang membership, arguing that the district court abused its discretion when it failed to recognize that the unfair prejudicial effect of that evidence outweighed any probative value. Despite a pretrial ruling that the prejudicial effect of these images would substantially outweigh any probative value relative to the robbery and firearms charges, the district court allowed the government to cross-examine Elias using the social media images after Elias testified on direct that he did not know

8

Hytmiah (an admitted member of the same gang in question) until the night of the robbery.

Even if we concluded that admitting the gang-affiliation evidence was an abuse of discretion, it would be harmless error. The government's case was generally strong,[3] and the district court instructed the jury to consider gang-affiliation evidence only for the permissible purpose of establishing relationships among the people in the case. We presume the jury was able "to understand, make sense of, and follow" this instruction. *Samia v. United States*, 599 U.S. 635, 646 (2023).

### B. Blood-Covered Gloves in Thompson's Pocket

Thompson challenges the district court's decision to let the government cross-examine him about a pair of apparently bloody gloves that police recovered from his back pocket when he was arrested the night of the robbery, and to let the government show the jury police paperwork about the gloves. In a pretrial ruling, the district court suppressed all evidence of the gloves because the government

---

[3] The evidence at trial included testimony from the robbery's organizer (Hytmiah) about Elias's role in the robbery's execution, *see generally* Gov't App'x 1–128, and phone records showing Elias's frequent contact with other perpetrators, *see, e.g.*, App'x 1769–70. Elias also discussed the robbery with others in recorded calls while he was detained before trial. *See* Gov't Ex. 513.

failed to timely disclose them. *See United States v. Elias*, No. 18-CR-33, 2022 WL 805334, at \*5-6 (E.D.N.Y. Mar. 16, 2022). But Thompson took the stand and explained that he was not involved in the robbery in any way, and that he met up with Elias and the other perpetrators only after the robbery was over. The government then sought to impeach his credibility on cross by asking whether, at the time of his arrest, police took from him a pair of bloody gloves. When Thompson said no, the government offered documentation contradicting his denial.

"A trial court is accorded broad discretion in controlling the scope and extent of cross-examination." *United States v. Gatto*, 986 F.3d 104, 121 (2d Cir. 2023). "Once a defendant has put certain activity in issue by offering innocent explanations for or denying wrongdoing, the government is entitled to rebut by showing that the defendant has lied." *United States v. Beverly*, 5 F.3d 633, 639 (2d Cir. 1993); *cf. United States v. Havens*, 446 U.S. 620, 627–28 (1980) ("[A] defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally

obtained and that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt.").

Thompson testified during his direct examination that he met with the perpetrators of the robbery after the robbery was completed, but before he and others were arrested during the traffic stop of Elias's car. The government's questions and evidence about the bloody gloves in Thompson's pocket fairly impeached his credibility by undermining his testimony that he joined the others *after* they completed the robbery. *See Beverly*, 5 F.3d at 640. By testifying as he did, Thompson opened the door to impeaching evidence.

Thompson's argument that admitting the gloves was unduly prejudicial because he was not able to test the gloves to determine whether they were, in fact, bloody, does not persuade us otherwise. He was able to argue to the jury that there was no evidence that the substance on the gloves was blood because the government hadn't tested it. It was for the jury to decide what weight, if any, to give to his possession of the gloves.

### C. The Security Camera

Elias and Thompson challenge the district court's decision to permit the government to offer in its rebuttal case testimony and a photograph showing that

a security camera mounted at the stash house *at the time of the trial* was the same brand as a security camera that police recovered from Elias's car the night of the robbery. They contend that evidence about the camera at the stash house in 2022 was irrelevant, lacked any foundation, and was unfairly prejudicial. The government responds that the evidence was relevant to rebut Elias's testimony denying knowledge that a camera had been seized from his car.

Any arguable error in admitting the evidence was harmless. As Thompson argues, especially absent any evidence that a camera was stolen from the stash house in the course of the robbery, evidence that the brand of the camera recovered from Elias's car immediately after the robbery was the same as the brand of the camera mounted in the stash house *years after the robbery* had little to no probative value. In the face of the government's strong case against both defendants, we "can conclude with fair assurance that the [security camera] evidence did not substantially influence the jury."[4] *McCallum*, 584 F.3d at 478.

---

[4] In addition to the evidence concerning Elias cited in note 3, Hytmiah's testimony and the phone records likewise detailed Thompson's involvement in the robbery's execution. Furthermore, the trial evidence included the transcript of a confession Thompson made to federal agents after his arrest. *See* App'x 1822–37.

*D. Detective Adam Georg's Summary Evidence*

Elias and Thompson challenge the district court's decision to permit Detective Adam Georg to testify about the contents of a chart summarizing evidence pertaining to cell phone records and location data, arguing that Georg's testimony amounted to an unfair and premature closing statement.

We disagree. Federal rules permit district courts to "use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006 (2022).[5] We have regularly affirmed trial courts' admission of charts to summarize voluminous records of phone calls and other communications. *See, e.g.*, *United States v. Ho*, 984 F.3d 191, 209–10 (2d Cir. 2020); *United States v. Miller*, 954 F.3d 551, 565 (2d Cir. 2020).

The phone records in this case were voluminous and contained intricate data that might have been difficult for jurors to review on their own. *See, e.g.*, App'x 480–756. Elias and Thompson do not dispute that Georg's testimony accurately synthesized the phone records consistent with Rule 1006. We disagree with Elias and Thompson that the testimony was improperly cumulative of the underlying evidence; the district court was within its discretion in concluding that

---

[5] We cite to the text of Rule 1006 in effect at the time of trial, before the rule was substantially amended in 2024. *See* Fed. R. Evid. 1006 advisory committee's note to 2024 amendment.

13

the summary testimony was necessary to help the jury understand the hundreds of pages of dense phone records.

## IV. Elias's Special Conditions of Supervised Release

Elias challenges several special conditions of supervised release that appear in his written judgment but that the district judge did not pronounce at sentencing. We owe no deference to the district court's conclusions when we review "whether the spoken and written terms of a defendant's sentence differ impermissibly." *United States v. Washington*, 904 F.3d 204, 207 (2d Cir. 2018).[6] "[I]n the event of variation between an oral pronouncement of sentence and a subsequent written judgment, the oral pronouncement controls, and any burdensome punishments or restrictions added in the written judgment must be removed." *United States v. Rosado*, 109 F.4th 120, 124 (2d Cir. 2024).

In this case, the district court sentenced Elias to five years' supervised release without pronouncing any standard or special conditions, even by

---

[6] The government urges plain error review here because the defendant never objected to his conditions of supervised release at sentencing. *See* Gov't Br. 69. But we have explained that where, as here, "the defendant lacked prior notice in the district court that the term would be imposed, we will review the issue [without deference] even if the defendant failed to raise an objection in the district court." *United States v. Rosado*, 109 F.4th 120, 124 (2d Cir. 2024).

reference. But the written judgment included four special conditions. We address in turn whether each was properly imposed.

The first special condition of supervised release that Elias challenges states that he "shall not possess a firearm, ammunition[,] or destructive device." Elias App'x 118. However, that special condition of supervised release is nearly identical to—but overall less restrictive than—a standard condition of supervised release that Elias has not challenged on appeal. That condition says in relevant part: "You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon[.]" *Id.* at 117. So even if this special condition was insufficiently pronounced, it "does not affect substantial rights" and "must be disregarded." Fed. R. Crim. P. 52(a).

The second special condition of supervised release that Elias challenges states that Elias:

> [s]hall not associate in person, through mail, electronic mail[,] or telephone with any individual with an affiliation to any organized crime groups, gangs[,] or any criminal enterprise; nor shall the defendant frequent any establishment, or other locale where these groups may meet pursuant, but not limited to, a prohibition list provided by the probation department[.]

15

Elias App'x 118. The government responds that the special condition was the same as a standard condition of supervised release, which need not be orally pronounced because it is listed in United States Sentencing Guideline § 5D1.3(c)(8).[7]

But there are material differences between the special condition the court imposed and the condition recommended by the Guidelines in § 5D1.3(c)(8). The special condition in Elias's judgment imposes restrictions on Elias's association with a broad class of people who have "an affiliation" with "any" criminal groups and organizations, regardless of whether Elias knows of that affiliation. Elias App'x 118. It also restricts Elias' interactions with "gangs," regardless of whether they are engaged in criminal activity at all. *Id.* And it restricts the locations Elias may "frequent," even on his own. *Id.* The condition recommended in U.S.S.G. § 5D1.3(c)(8) is meaningfully narrower; it limits Elias's interactions only with people whom Elias "knows [are] engaged in criminal activity" and prohibits "knowing[]" communications with people convicted of a felony. It has no

---

[7] Section 5D1.3(c)(8) of the Guidelines recommends imposing the following condition of supervised release: "The defendant shall not communicate or interact with someone the defendant knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, the defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer."

restrictions at all on where Elias may go. *See* U.S.S.G. § 5D1.3(c)(8). This special condition is not coextensive with a standard condition. Because it was not pronounced at sentencing, the condition should be stricken from the judgment. *See Rosado*, 109 F.4th at 125–26.

The third special condition of supervised release that Elias challenges states that Elias:

> shall not have contact with any of the victims or any of their family members. This means that [he] shall not attempt to meet in person, or communicate by letter, telephone, email, the internet, or through a third party, without the knowledge and permission of the U.S. Probation Department.

Elias App'x 118. The government acknowledges that this special condition "should have been, but was not, announced at sentencing," but nonetheless argues that its omission was not plain error because Elias consented to this condition by way of a letter from counsel filed several days after sentencing. Gov't Br. 72; *see also* Elias App'x 131 (counsel's letter). However, the letter from counsel consents only to Elias "refrain[ing] from contacting the victim of the offense" as a condition of supervised release. Elias App'x 131. The letter consents to a narrower condition of release than the condition the district court imposed, which extends to the family members of the victim. Elias's counsel either did not know or did not

17

consent to the full scope of the contemplated condition of supervised release. So we will not deem it a sufficiently "intentional relinquishment or abandonment of a known right" to challenge the condition to its full extent. *United States v. Brown*, 352 F.3d 654, 663 (2003). As the government concedes it was not otherwise pronounced in Elias's presence, to the extent the condition imposes limitations beyond the requirement that Elias not contact the victim, it must be stricken. *See Rosado*, 109 F.4th at 125–26.

Finally, the fourth special condition of supervised release that Elias challenges states that Elias "shall comply with the attached order of forfeiture." Elias App'x 118. We need not evaluate this special condition on its own terms. Instead, because we vacate Elias's forfeiture order in a published opinion issued contemporaneously with this summary order, we also vacate this condition.

## V. Thompson's Sentence

Thompson argues that his sentence was unreasonable because the district court did not reduce his term of imprisonment to reflect credit for nine months and twenty-four days he spent in state custody pending state firearms charges that resulted from the same arrest that ultimately led to this case. Thompson's argument is styled as a *substantive* reasonableness challenge, but it appears to be

18

at least in part a *procedural* reasonableness challenge because he contends that the district court failed to properly calculate Thompson's sentencing range under the United States Sentencing Guidelines. We review both the procedural and substantive aspects of Thompson's sentence and see no error.

"We review a sentence for procedural and substantive reasonableness under a deferential abuse-of-discretion standard." *United States v. Thavaraja*, 740 F.3d 253, 258 (2d Cir. 2014). "A district court commits procedural error where it fails to calculate the Guidelines range" or "makes a mistake in its Guidelines calculation." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). Procedural error also occurs if a sentence rests "on a clearly erroneous finding of fact." *Id.* Thompson invokes Sentencing Guideline § 5G1.3(b), which directs a court to "adjust" a sentence of imprisonment "for any period of imprisonment already served on [an] undischarged term of imprisonment" resulting from an offense that arose from "relevant conduct" to the offense of conviction as that term is defined by the Guidelines. *See also* U.S.S.G. §§ 1B1.3(a)(1)–(3) (defining relevant conduct). Thompson also invokes Sentencing Guideline § 5K2.23, which permits (but does not require) a downward departure if the defendant has "completed" a

term of imprisonment and would have qualified for a sentence adjustment under § 5G1.3(b) had that term of imprisonment been "undischarged."

Thompson's time in New York custody was the result of firearms charges that were ultimately dismissed, and we have held that pretrial detention on dismissed state charges, if they do not result in being "sentenced to prison," are not a "term of imprisonment" sufficient to meet the requirements of § 5G1.3(b)(1). *United States v. Young*, 910 F.3d 665, 674 (2d Cir. 2018). Moreover, the district court did not find that Thompson's gun charges in state court involved "related conduct" to the charges here. U.S.S.G. §§ 1B1.3(a)–(3). And because Thompson cannot satisfy these requirements of § 5G1.3(b), he is not eligible for an adjustment under § 5K2.23. So the district court's Guidelines calculation was not in error.

As for substantive reasonableness, a district court commits substantive error if it imposes a sentence "so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing [it] to stand would damage the administration of justice." *Thavaraja*, 740 F.3d at 259. The district court imposed consecutive terms of imprisonment, as required by statute, that total 130 months' imprisonment. That sentence is neither shockingly high nor shockingly low for Thompson's role in a dangerous home-invasion robbery that had seven

perpetrators working in concert, involved firearms, and resulted in injury and physical restraint to the home's occupant.

* * *

The district court's judgment is **VACATED** with respect to Defendant-Appellant Elias's second, third, and fourth special conditions of supervised release, and the case is **REMANDED** with instructions to the district court to strike or revise the conditions as set forth above. Moreover, as directed in the opinion filed simultaneously with this order, the judgment of forfeiture against Elias is **VACATED**. The district court's judgment is otherwise **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court