**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**George ESPINAL, Defendant–Appellant.**

**No. 418, Docket 92–1316.**

United States Court of Appeals,
Second Circuit.

Submitted Nov. 20, 1992.

Decided Dec. 21, 1992.

David H. Weiss, New York City, for appellant.

James E. Johnson, New York City, for appellee.

Before: PRATT, ALTIMARI, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

HEANEY, Senior Circuit Judge:

George Espinal appeals his conviction on six counts of racketeering, conspiracy, possession of cars with altered vehicle identification numbers (VINs), and alteration of VINs, for which he was sentenced to 300 months in prison. Espinal asserts prosecutorial misconduct and erroneous application of the sentencing guidelines. We affirm.

## I. FACTS

The charges against Espinal stem from three gunpoint robberies of automobile parking garages in Manhattan during 1990. Much of the testimony against Espinal came from three cooperating codefendants, who indicated that Espinal had been organizing these robberies with codefendant Juan Flete since early 1988. Though testimony indicated that Espinal only participated personally in one of the robberies, he was involved both in the planning of the robberies and the disposition of the stolen automobiles. The evidence against him included his fingerprint found on one of the stolen automobiles and his being arrested while driving in another.

Espinal was sentenced under the sentencing guidelines effective November 1, 1990. The district court's calculations included enhancements for use of a firearm, injury to and restraint of the garage attendants, and the value of the stolen automobiles. *See* U.S.S.G. § 2B3.1(b). The court also enhanced Espinal's offense level for obstruction of justice and leadership role before determining a final offense level of 38 through multiple count adjustment. *See* U.S.S.G. §§ 3C1.1, 3B1.1(a), 3D1.4. Finding that Espinal fell into criminal history category II, the court sentenced Espinal to 300 months in prison.

## II. DISCUSSION

### A. Prosecutorial Misconduct

During summation and rebuttal summation, the prosecutor made a series of statements that ranged from merely erroneous to arguably prejudicial and which Espinal argues deprived him of a fair trial. These errors by the prosecutor included misstating the date on which a witness began cooperating, discussing drug activity involving the defendant that had no basis in or out of the record, and mentioning prior consistent grand jury testimony that was not in the record. Though an examination of the trial transcript leads one to believe that at times the prosecutor was simply confused as to what was or was not in the record, other errors were of a more intentional nature. For example, the prosecutor told the jury that the defendant did not dispute the existence of a criminal enterprise, that the prosecution had gone into the cooperating witnesses' criminal histories on direct examination so that the jury would be able to make an informed decision on credibility, and in its clearest error, that the defense had dealt with the evidence against Espinal by "coming up with a really improbable theory that even the defense couldn't complete with a straight face." Supp.App. at 84.

■ Review of prosecutorial misconduct rests on three factors: "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *United States v. Friedman,* 909 F.2d 705, 709 (2d Cir.1990). Review of such misconduct must consider the objectionable remarks within the context of the entire trial. *United States v. Young,* 470 U.S. 1, 11–12, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985).

■ In this case the overriding factor is the presence of curative measures each time they were necessary, though the certainty of Espinal's conviction absent the misconduct is also substantial. Most of these measures took the form of jury instructions, either at the time of the objectionable conduct or prior to deliberations, but in the case of one prosecutorial misstatement, the defense objection resulted in an immediate correction by the prosecutor.[1]

---

1. This was the discussion of the drug dealing allegedly involving the defendant. The prosecutor was discussing a witness's past drug trafficking and noted that the witness had been employed by Espinal. The witness, Marco Tipiani, had, of course, been employed by Espinal in the

■ The court issued curative instructions regarding each of Espinal's remaining points. The court instructed the jury that the prosecutor's suggestion that the existence of the criminal enterprise was not in dispute was to be disregarded, and properly instructed the jury as to the prosecution's burden of proof. The court also instructed the jury that the prosecutor's remarks regarding the government's motives for bringing out the cooperating witnesses' criminal histories were not in evidence, irrelevant, and to be disregarded. The court noted that had the prosecution not done so, the defense would have been free to do so on cross-examination. Clearing up two additional errors by the prosecution, the court also instructed the jury to disregard the mention of the prior consistent grand jury testimony and clarified the actual date on which a witness had begun cooperating with the government.

■ The government argues that these errors ranged from *de minimis* to harmless, even absent the curative instructions. Though we do not dispute that the errors are not all of equal magnitude, our ruling turns on the adequacy of the curative measures and the significance of the remarks in the context of the entire trial. This is particularly true of the last statement we take up, that the defense counsel could not present its theory "with a straight face." The government asserts that this remark is at worst harmless because "[a]t no time did the prosecutor suggest that counsel had personal knowledge that undercut the theory" and that the remark "was aimed at the message, not the messenger." Brief for the Appellee at 29–30. Subjective analysis of the prosecutor's intent is both impossible and unnecessary, but an objective view of the remark indicates that had the target been simply the defense theory, no mention of defense counsel was necessary. Though the eventual target was quite clearly the defense theory, the means used were unquestionably improper, as noted by the district court in its curative instruction.

■ Curative measures constitute only one part of the analysis. The second significant part to this case is the certainty of conviction absent the misconduct. There was substantial evidence to support Espinal's conviction. Three cooperating codefendants testified of Espinal's role in the series of thefts. Espinal was arrested while driving in an automobile from one of the robberies, and his fingerprint was found on an automobile from another of the robberies. Though the certainty of conviction alone does not excuse the conduct in this case, when considered with the extensive curative measures taken by the court, we do not find that Espinal was deprived of a fair trial.

## B. Application of the Sentencing Guidelines

### 1. The Criminal History Category

■ The probation officer placed Espinal in criminal history category II based on a previous conviction for conspiracy to alter VINs for which Espinal had been sentenced to 18 months in prison. Espinal asserts that the sentence was "for conduct that is part of the instant offense," U.S.S.G. § 4A1.2, application note 1, and should therefore not have been counted. Espinal raised this argument at sentencing, but the district court found that the prior sentence was not for conduct that was part of the instant offense and therefore sentenced Espinal under criminal history category II, increasing his sentencing range by 27–34 months. At the defendant's request, the court did direct that the two sentences be served concurrently. Though the court did not mention the guidelines in making this decision, it is likely that § 5G1.3(b) would have required concurrent sentences in any event.

Espinal relies on the chronology of events in making his argument. As the conspiracies charged in this case began in 1988 and the incident underlying the prior

automobile thefts and not in dealing drugs. After the defense objection, the prosecutor clarified his statement: "Let me make my statement clear. Marco Tipiani admitted dealing drugs. Marco Tipiani. No one in this trial testified about dealing drugs either to or for George Espinal. That is not an issue in this case, and that is not before you." Supp.App. at 77.

sentence occurred in 1989, Espinal argues that the prior conduct was part of the instant offense. He further asserts that several of the same individuals were involved in the prior incident as in the instant offenses. At sentencing, the government asserted that the cooperating witnesses in this case had been debriefed regarding their criminal activities, and none of them had mentioned this offense. Though we would prefer that the court had required the government to ask the cooperating witnesses whether they had participated in the prior incident, we do not find that the court was clearly erroneous in finding that the prior sentence was not for conduct that is part of the instant offense.

Espinal relies further on U.S.S.G. § 4A1.2(e)(1), which provides that "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted." Espinal contends that this provision precludes the district court from counting a prior sentence imposed for conduct that occurred after the conduct for the instant offense had commenced, but in doing so, he reads into the guideline that which is not there. Section 4A1.2(e)(1) is not directed at the chronology of the conduct, but the chronology of the sentencing. *See United States v. Beddow*, 957 F.2d 1330, 1337 (6th Cir.1992); *United States v. Walling*, 936 F.2d 469, 470–71 (10th Cir. 1991); *United States v. Hoy*, 932 F.2d 1343, 1345 (9th Cir.1991). We therefore find that the district court properly counted Espinal's prior sentence in determining his criminal history category.

### 2. The Leadership Role Enhancement

At sentencing, Espinal argued that he should only receive a three-point enhancement rather than a four-point enhancement for his leadership role under § 3B1.1(a). He now argues that he should have received no enhancement for leadership role. His argument rests on the premise that because he did not assert absolute control over the activities of those involved in the string of robberies, his sentence

should not be enhanced. We find this argument without merit. The evidence indicates that Espinal planned those robberies in which he was involved, that he recruited accomplices, and that he had an "option" on the stolen automobiles of his choice. The commentary to § 3B1.1(a) lists a variety of factors to be considered. Among those factors are "the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, [and] the degree of participation in planning or organizing the offense...." U.S.S.G. § 3B1.1, application note 3. Each of these is satisfied. That members of the conspiracy committed other crimes in which Espinal was not involved in no way lessens his leadership role in the offenses of conviction. We find that the district court correctly added four points to Espinal's offense level for his leadership role.

### III. CONCLUSION

After careful review of the record in this case, we find that Espinal was not deprived a fair trial due to prosecutorial misconduct because of the curative measures taken by the district court and because of the weight of the evidence against him. We further find that the district court correctly determined Espinal's criminal history category, and that the district court correctly enhanced Espinal's offense level for leadership role under the sentencing guidelines. Accordingly, the judgment of the district court is affirmed.