**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4745

RONALD LEE JONES,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4746

JACKIE MCGEORGE,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-97-109)

Argued: June 5, 1998

Decided: August 14, 1998

Before WIDENER, ERVIN, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge Widener con-
curred in the result.

_____

**COUNSEL**

**ARGUED:** J. Casey Forrester, ECONOMOU, FORRESTER & RAY, Alexandria, Virginia, for Appellant Jones; Gregory Bruce English, ENGLISH & SMITH, Alexandria, Virginia, for Appellant McGeorge. Gary Edward Jackson, SECURITIES & EXCHANGE COMMISSION, Washington, D.C., for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Michael E. Rich, Assistant United States Attorney, Gary E. Jackson, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Brothers Ronald Jones and Jackie McGeorge were both convicted of conspiracy to possess cocaine hydrochloride (cocaine) with intent to distribute in violation of 21 U.S.C.A. § 846 (West Supp. 1998), and possession of cocaine with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1) (West 1981). Jones was sentenced to 343 months imprisonment and McGeorge was sentenced to 134 months imprisonment. On appeal, both Jones and McGeorge challenge their convictions and sentences. Jones contends that his conspiracy conviction violated the Double Jeopardy Clause, that the introduction of evidence from a prior conviction violated Federal Rule of Evidence 404(b), and that he was entitled to a downward departure under the Sentencing Guidelines. McGeorge contends that the indictment violated the terms of his plea agreement in a related case, that the introduction of evidence from Jones's prior conviction violated Federal Rule of Evidence 404(b), and that he should not have been sentenced under Criminal History Category III. Finding no reversible error, we affirm Appellants' convictions and sentences.

2

I.

Sometime prior to March 1, 1996, Doris Lynch contacted Sam Barnhardt about purchasing two kilograms of cocaine. Shortly thereafter, John Barnhardt, Sam Barnhardt's son and a government informant, attempted to telephone Lynch to arrange the transaction. When Jones, rather than Lynch, answered the phone, Barnhardt began negotiating the sale of the two kilograms of cocaine with him. After several more calls between Barnhardt and either Jones or Lynch, they eventually agreed to meet at a Cracker Barrel restaurant in Prince William County, Virginia.

On March 12, 1996, two undercover agents and Barnhardt arrived at the agreed upon Cracker Barrel restaurant. Jones, McGeorge, and Lynch arrived with approximately $38,000 about fifteen minutes later. After Barnhardt counted the money, he handed the cocaine to McGeorge. During the exchange, which was recorded, Jones told one of the agents that "he had been conducting his business through the airways by the use of females, and that he was glad to meet [the agents] because he could finally get his business out of the air and on to the ground." (J.A. at 346.) As the three attempted to drive off with the 2.2 kilograms of cocaine, they were stopped and arrested by undercover agents.

On March 22, 1996, McGeorge pleaded guilty to possession with intent to distribute two kilograms of cocaine and using a firearm during a drug trafficking offense. Similarly, Lynch pleaded guilty to possession with intent to distribute two kilograms of cocaine. Jones, however, opted for a trial and was found guilty of conspiracy to possess with intent to distribute (the Cracker Barrel conspiracy) as well as substantive drug and firearm counts.

Both McGeorge and Lynch testified against Jones in the Cracker Barrel conspiracy trial pursuant to written plea agreements. Although McGeorge denied any involvement in any other drug transactions, Lynch told the Government that she had been engaged with Jones and McGeorge in an earlier drug conspiracy. According to Lynch, she and other women flew to Florida to purchase cocaine for Jones and McGeorge. Based on the information provided by Lynch, the Government began investigating her allegations of a prior conspiracy.

3

The Government's subsequent investigation revealed the following. Around August of 1995, Jones asked Lynch if she had any connections in Florida for purchasing cocaine. Lynch said that she did have a connection, but that she could not remember his phone number. After contacting a mutual friend, Lynch obtained the phone number of her source, Gregory Simms. Shortly thereafter, Lynch contacted Simms and asked if he was still in the business of selling cocaine. When Simms said that he was, Lynch offered to purchase one or two kilos of cocaine.

Lynch informed Jones, who was in Florida, that she had "touched ground" with her source in Florida. Shortly thereafter, McGeorge called Lynch and asked how much money she would need to fly to Florida to meet with Jones and her source. After agreeing upon $500, McGeorge wired her the money. Once in Florida, Lynch, Jones, and Simms met at the Ramada Inn near the airport to discuss the transaction. Eventually, all three left in Simms's car to pick up the cocaine.

The cocaine was placed in plastic bags and stuffed into Lynch's biker shorts, pantyhose, and girdle. Simms took Jones and Lynch to the airport where they caught a flight to Charlotte, North Carolina. Once in Charlotte, McGeorge and a woman met them. Lynch got into the car with the other woman and Jones got into the car with McGeorge. Upon their arrival in Virginia, Lynch gave the drugs to McGeorge. Thereafter, until around the last week of February, either Lynch or some other woman would fly to Florida on a weekly basis to purchase cocaine for Jones and McGeorge.

On March 13, 1997, a federal grand jury indicted Jones and McGeorge on one count of conspiracy to possess cocaine with intent to distribute (the Florida conspiracy) in violation of 21 U.S.C.A. § 846 (West Supp. 1998), and on fourteen counts of possessing cocaine with intent to distribute in violation of 21 U.S.C.A.§ 841(a)(1) (West 1981). Prior to trial, Jones filed a motion to dismiss the conspiracy count on the grounds that it violated the Double Jeopardy Clause. In addition, Jones filed a motion in limine to exclude certain evidence from his trial in the Cracker Barrel case. McGeorge filed a motion to dismiss the indictment on the grounds that it violated his plea agreement in the Cracker Barrel case. In addition, McGeorge adopted the motion by Jones to exclude certain evidence from Jones's prior trial.

4

After hearing arguments on the matter, the district court denied all of the Appellants' motions.

Jones was tried by a jury; McGeorge had a bench trial. Both Appellants were convicted of Counts one, four through nine, and eleven through fifteen.**1** Both Jones and McGeorge were sentenced on August 15, 1997. After the Government filed a motion for reconsideration, both Appellants were resentenced. Jones was sentenced to 343 months imprisonment on each count, the sentences to run concurrent with each other, and concurrent with the sentence he received on his prior drug-related convictions and consecutive to the sixty month sentence he received on his prior firearm conviction. McGeorge was sentenced to 134 months imprisonment on each count, the sentences to run concurrent with each other, and concurrent with the sentence he received on his prior conspiracy conviction and consecutive to the sixty month sentence he received on his prior firearm conviction.

On appeal, both Jones and McGeorge challenge their convictions and sentences. Jones contends (1) that his conspiracy conviction violated the Double Jeopardy Clause, (2) that the introduction of evidence from the Cracker Barrel case violated Federal Rule of Evidence 404(b), and (3) that he was entitled to a downward departure from the Sentencing Guidelines. McGeorge contends (1) that the indictment violated the terms of his plea agreement in the Cracker Barrel case, (2) that the introduction of evidence from Jones's prior conviction violated Federal Rule of Evidence 404(b), and (3) that he should not have been sentenced under Criminal History Category III.

II.

Jones first contends that the Government did not prove that he was a part of two separate agreements to distribute cocaine. Instead, Jones argues that there was only one continuing agreement among himself, McGeorge, and Lynch to obtain cocaine for distribution in the Eastern District of Virginia. Because he had already been convicted for that conspiracy in the Cracker Barrel case, Jones contends that his prose-

_____

**1** Count ten was dismissed due to a typographical error in the indictment. Counts two and three were dismissed at the request of the prosecution.

cution for the so-called Florida conspiracy violated the Double Jeopardy Clause. This Circuit reviews a double jeopardy claim de novo. See United States v. Imngren, 98 F.3d 811, 813 (4th Cir. 1996).

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause, among other things, protects individuals against suffering multiple punishments for the same offense. See United States v. Dixon, 509 U.S. 688, 696 (1993). The Fourth Circuit has adopted a multi-pronged "totality of the circumstances" test to determine whether two successive conspiracy counts charge the"same offense" within the meaning of the Double Jeopardy Clause. See United States v. MacDougall, 790 F.2d 1135, 1144 (4th Cir. 1986). Under this test, we consider five factors:

> (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated.

United States v. Ragins, 840 F.2d 1184, 1189 (4th Cir. 1988). With these principles in mind, we conclude, for the reasons that follow, that Jones's conviction on the conspiracy count did not violate the Double Jeopardy Clause.

The first factor relates to the time period covered by the conspiracies. The Cracker Barrel conspiracy covered conduct from March 1, 1996 through March 12, 1996. The indictment in the Florida conspiracy covered conduct beginning in the summer of 1995 and ending in March of 1996.**2** According to the Government, there was only a

_____

**2** Even though the overt acts charged in the Cracker Barrel conspiracy occurred subsequent to the overt acts charged in the Florida conspiracy, the Cracker Barrel conspiracy was tried prior to the Florida conspiracy, which is the subject of this appeal.

6

slight overlap between the two conspiracies. In truth, the entire time period covered by the Cracker Barrel conspiracy was included in the time period covered by the Florida conspiracy. Despite the overlap in time, this one factor is not determinative. See United States v. McHan, 966 F.2d 134, 138 (4th Cir. 1992) (noting that the five factors should be applied flexibly, with no pre-assigned weight given to any factor). Indeed, in a similar case we found no violation of the Double Jeopardy Clause even though "the time period of the second conspiracy . . . included the first conspiracy." United States v. Hoyte, 51 F.3d 1239, 1246 (4th Cir. 1995).

The second factor involves the location of the conspiracies. In the Cracker Barrel conspiracy, Jones was charged with participating in a conspiracy to purchase cocaine in Prince William County, Virginia. In the Florida conspiracy, Jones was charged with participating in a conspiracy to purchase cocaine in Florida. With that having been said, we note that the object of both conspiracies was to distribute drugs in the Eastern District of Virginia. Nevertheless, we have found no violation of the Double Jeopardy Clause even though the second conspiracy charged involved the sale of drugs at the same location as the first conspiracy charged. See id.

The third factor is whether the conspiracies involved the same individuals. Both conspiracies involved Jones, McGeorge, and Lynch. The Cracker Barrel conspiracy, however, also involved a government informant, Barnhardt. The Florida conspiracy added a new defendant, Simms, as well as several unindicted coconspirators who were used as drug couriers, Yolanda Reynolds, Gayle Black, and Luwan Jackson. As such, the conspiracies involved different individuals.

The fourth factor is whether the overt acts charged in the two conspiracies are different. We conclude that they are. The Cracker Barrel conspiracy involved a limited number of overt acts, all related to the purchase of cocaine at a Cracker Barrel restaurant. The Florida conspiracy involved numerous overt acts, all related to the purchase of cocaine in Florida. As a result, the conduct alleged in the Cracker Barrel conspiracy did not constitute "the entirety of the agreement" alleged in the Florida conspiracy. United States v. Jarvis, 7 F.3d 404, 412 (4th Cir. 1993) (finding that a subsequent prosecution violated the Double Jeopardy Clause where the conduct alleged in the first

7

indictment "constituted the entirety of agreement"). Of even greater import, the nature and scope of the conspiracies were very different. The Florida conspiracy involved not only the importation of cocaine from Florida, but an elaborate smuggling operation. As Jones himself admitted, the Cracker Barrel conspiracy was distinct from his prior drug operation. (J.A. at 346 (telling an undercover agent that "he had been conducting his business through the airways by the use of females, and that he was glad to meet with [the agents] because he could finally get his business out of the air and on to the ground").) When a second conspiracy has a different goal than the first conspiracy, as was the case here, a second prosecution is not barred by the Double Jeopardy Clause. See, e.g., United States v. Guzman, 852 F.2d 1117, 1120 (9th Cir. 1988) (so holding).

The final factor is whether the substantive statutes charged are identical. In both cases, Jones was charged with conspiracy to possess cocaine with intent to distribute. In the Cracker Barrel conspiracy, however, Jones was also charged with being a felon in possession, see 18 U.S.C.A. § 922(g) (West Supp. 1988), and using or carrying a firearm during and in relation to a drug trafficking offense, see 18 U.S.C.A. § 924(c) (West Supp. 1998).

After applying the five-part test of United States v. Ragins, 840 F.2d 1184, 1188 (4th Cir. 1988), we conclude that Jones's conviction for the Cracker Barrel conspiracy did not bar his prosecution for the Florida conspiracy. Despite some overlap in time between the two conspiracies, the Florida conspiracy charged a broader group of activities, had different objectives, involved different locations and participants, and covered different lengths of time. Indeed, the facts in the instant case are nearly identical to those in Hoyte, where this Court found no violation of the Double Jeopardy Clause. Accordingly, the district court did not err in refusing to dismiss the conspiracy count.

III.

McGeorge contends that the charges in the current indictment arose out of the same criminal conduct covered by his prior plea agreement. Because his prior plea agreement provided that he would not be further prosecuted in the Eastern District of Virginia "for offenses arising from the conduct charged in the Information," McGeorge argues

8

that the current indictment should have been dismissed. Judicial interpretations of plea agreements are guided by the law of contracts. See United States v. Martin, 25 F.3d 211, 216-17 (4th Cir. 1994). Breaches of plea agreements must be proven by the party alleging a breach. See id. Because the case involves an interpretation of the plea agreement, our review is de novo. See id.

McGeorge's plea agreement provided, among other things, that the United States would

> not further criminally prosecute defendant in the Eastern District of Virginia for offenses arising from conduct charged in the information, except crimes of violence presently unknown to the United States. This plea agreement binds only the United States Attorney's Office for the Eastern District of Virginia and the defendant; it does not bind any other prosecutor in any other jurisdiction.

(J.A. at 186 (emphasis added).) For the reasons that follow, we conclude that McGeorge received the benefit of his bargain.

McGeorge was promised that he would not be further prosecuted for offenses arising from conduct charged in the first information. See Santobello v. New York, 404 U.S. 257, 261-62 (1971) (providing that the Government must comply with promises it makes in a plea agreement). The only conduct charged in the first information was the purchase of cocaine from an undercover agent in the parking lot of a Cracker Barrel restaurant in Prince William County, Virginia. The charges in the second indictment did not arise from that conduct, but dealt only with the importation of cocaine from Florida. Moreover, as noted above, application of the five-part Ragins test establishes that the conduct underlying the instant offense is not the same conduct that gave rise to the information to which McGeorge pleaded guilty. Therefore, the instant prosecution was not barred by the plea agreement McGeorge had previously entered.

IV.

Next, both Appellants contend that the district court erred in admitting evidence from Jones's first trial. In particular, they argue that

9

Jones's statement to the undercover agents during their meeting at the Cracker Barrel that "he had been conducting his business through the airways by the use of females, and that he was glad to meet [the agents] because he could finally get his business out of the air and on to the ground," (J.A. at 346), only proved his bad character and should have been excluded pursuant to Rule 404(b) of the Federal Rules of Evidence. Even if admissible under Rule 404(b), both Appellants argue that the statement was more prejudicial than probative and, therefore, inadmissible under Rule 403 of the Federal Rules of Evidence. A district court's evidentiary rulings are reviewed under the narrow abuse of discretion standard. See United States v. Grimmond, 137 F.3d 823, 831 (4th Cir. 1998).

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). The Appellants' reliance upon this rule is misplaced, however. Jones's reference to "his business [in the] air" is direct evidence of the existence of the Florida conspiracy in which both Jones and McGeorge were alleged to have participated. When the Government introduces evidence not as "evidence of other crimes," but direct evidence of the charged crime, Rule 404(b) does not apply. See United States v. Loayza, 107 F.3d 257, 263-64 (4th Cir. 1997) (holding that evidence of defendant's participation in a scheme to defraud during a later time period not covered by the indictment was direct evidence of the charged offense, not 404(b) evidence); United States v. Trong Cuong, 18 F.3d 1132, 1142 (4th Cir. 1994) (noting that the government was introducing evidence that the defendant unlawfully prescribed controlled substances not as 404(b) evidence, but instead as direct evidence to prove the crime charged in the indictment).

Although not excluded by Rule 404(b), Jones's statement may nevertheless be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. As to Jones, the statement in this case was an admission to participating in the charged conspiracy. In Old Chief v. United States, 117 S. Ct. 644 (1997), the Supreme Court recently noted that the "term `unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Id. at 650. Jones's statement

10

was "proof specific to the offense charged." See id. Accordingly, it could not have lured the factfinder into declaring Jones's guilt on an impermissible ground.

McGeorge's claim that Rule 403 barred admission of Jones's statement in his trial is also without merit. McGeorge opted for a bench trial. We have previously held that, in the context of a bench trial, evidence should not be excluded under Rule 403 on the grounds of unfair prejudice because a judge is better able to weigh the probative value of the evidence and to reject any improper inferences. See Schultz v. Butcher, 24 F.3d 626, 631-32 (4th Cir. 1994). Thus, the district court did not abuse its discretion in admitting the statement pursuant to Rule 403 in either Jones's jury trial or McGeorge's bench trial.

V.

Jones contends that the district court erred in failing to recognize its power to depart from the Sentencing Guidelines to account for successive prosecutions for the same relevant conduct. A district court's refusal to grant a downward departure is reviewable only when the district court mistakenly thought it lacked the power to depart. See United States v. Broughton-Jones, 71 F.3d 1143, 1145 (4th Cir. 1995) (citing United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir. 1990)). Here, the district court found that it could not legally depart from the Sentencing Guidelines. As a result, the district court's decision not to depart is reviewable.

It is well established that a sentencing court may depart from the applicable guideline range where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C.A. § 3553(b) (West Supp. 1998). In determining "whether a potential basis for departure was adequately considered by the [Sentencing] Commission . . ., a sentencing court must focus on whether the factor is taken into account by the guidelines, policy statements, or commentary." United States v. Barber, 119 F.3d 276, 280 (4th Cir.) (en banc), cert. denied, 118 S. Ct. 457 (1997); see also United States v. Brock, 108 F.3d 31, 33 (4th Cir. 1997).

11

Here, Jones contends that the district court should have departed on the grounds that he faced successive prosecutions. The Sentencing Guidelines, however, adequately have taken "successive" prosecutions into account. As the Supreme Court recently noted, the Sentencing Guidelines "explicitly contemplate the possibility of separate prosecutions involving the same or overlapping `relevant conduct.'" Witte v. United States, 515 U.S. 389, 404 (1995). Specifically, "§ 5G1.3 of the Guidelines attempts to achieve some coordination of sentences imposed in such situations with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (i.e., had all of the offenses been prosecuted in a single proceeding)." Id. (emphasis added). Here, Jones was sentenced to 343 months imprisonment on each count, the sentences to run concurrent with each other, and concurrent with the sentence he received on Counts one, two, and four of his prior conviction and consecutive to the sixty month sentence he received on Count three of his prior conviction. Had Jones been charged with all his conduct in one case, he would have received a sentence of at least 360 months imprisonment on each drug-related count.**3** Thus, Jones actually received a lighter sentence because he was subjected to successive prosecutions. Accordingly, the district court did not abuse its discretion in declining to depart on that basis.

VI.

Finally, McGeorge contends that the district court erred when it concluded that he was in Criminal History Category III. To give due deference to a district court's application of the Sentencing Guidelines, we review factual determinations for clear error and legal questions de novo. See United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996).

_____

**3** Had Jones been charged with all his conduct in one case, he would have faced a statutory maximum of life. See 21 U.S.C.A. § 841(b)(1)(A)(ii). Under the Career Offender Guideline, a statutory maximum of life translates into a base offense level of 37. See U.S.S.G. § 4B1.1 (1997). With a total offense level of 37 and a criminal history category of VI, Jones's guideline range would be 360 months to life. See U.S.S.G. Ch.5, Pt.A. (Sentencing Table).

12

The instructions for computing a defendant's Criminal History score are located in U.S.S.G. §§ 4A1.1 & 4A1.2 (1997). Under § 4A1.1, criminal history points are given for each "prior sentence of imprisonment."[4] A "prior sentence" is defined by the Guidelines as "any sentence previously imposed . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). The presentence report assigned McGeorge a Criminal History score of 4, which placed him in Criminal History Category III. Three points were based on his prior Cracker Barrel conviction, and one point was based on a previous DWI conviction.

McGeorge seems to rely on the chronology of events in making his argument. As the conspiracy charged in this case did not end until March of 1996 and the incident underlying the Cracker Barrel conspiracy occurred in March of 1996, McGeorge argues that his criminal history score should not include his sentence for the subsequent Cracker Barrel conviction. The commentary to § 4A1.2 explicitly addresses this issue. Application Note 1 provides as follows:

> Prior Sentence. "Prior sentence" means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense. See § 4A1.2(a). A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense.

U.S.S.G. § 4A1.2 (n. 1). As the commentary just quoted makes clear, it is the chronology of sentencing, rather than the chronology of the crimes, that is controlling. In a similar case, the Second Circuit made the following observation:

> [Defendant] contends that th[e Sentencing Guidelines] pre-clude[ ] the district court from counting a prior sentence imposed for conduct that occurred after the conduct for the instant offense had commenced, but in doing so, he reads

_____

**4** The number of points given is dependent on the length of the prior sentence. See U.S.S.G. § 4A1.1(a)-(c).

13

> into the guideline that which is not there. Section 4A1.2(e)(1) is not directed at the chronology of the conduct, but the chronology of the sentencing.

United States v. Espinal, 981 F.2d 664, 668 (2d Cir. 1992); see also United States v. Walling, 936 F.2d 469, 471 (10th Cir. 1991) (establishing "the chronology of sentencing rather than the commission of the crimes as controlling"); United States v. Hoy, 932 F.2d 1343, 1345 (9th Cir. 1991) (same). A prior sentence may properly be included in a criminal history calculation notwithstanding the fact that it resulted from conduct that occurred after the conduct for which the defendant is being sentenced. Therefore, the district court properly found that McGeorge was in Criminal History Category III.

In the alternative, McGeorge asserts that the sentence in the Cracker Barrel case was "for conduct that is part of the instant offense," U.S.S.G. § 4A1.2 (n.1), and therefore should not have been counted. McGeorge raised this argument at sentencing, but the district court found that the prior sentence was not for conduct that was part of the instant offense and therefore sentenced McGeorge under Criminal History Category III.

The resolution of this issue turns on the resolution of McGeorge's first argument on appeal. Specifically, McGeorge's first argument -- that the current indictment violated his plea agreement in the Cracker Barrel case -- turned on whether the conduct underlying the instant offense was the same conduct that gave rise to the Cracker Barrel conviction. In concluding that the current indictment did not violate his plea agreement, we found that the conduct was not the same. Since the conduct was not the same, the district court did not err in assigning McGeorge three criminal history points for the Cracker Barrel conviction. See U.S.S.G. § 4A1.2(a)(2) (providing that criminal history points be given for "any sentence previously imposed . . . for conduct not part of the instant offense").

14

VII.

For the foregoing reasons, Jones's and McGeorge's convictions and sentences are affirmed.

<u>AFFIRMED</u>

WIDENER, Circuit Judge, concurring:

I concur in the result.

15