UNITED STATES of America,
Appellee,

v.

Alan Barton NACHAMIE, a/k/a Alan Barton, Lydia Martinez, Jose Hernandez, and Edwin Tunick, Defendants–Appellees.

Docket No. 00–1806.

United States Court of Appeals,
Second Circuit.

Jan. 25, 2001.

Gerald J. McMahon, New York, NY, for Appellant Nachamie.

Bernard V. Kleinman, New York, NY; Jeremy F. Orden on the brief, for Appellant Martinez.

Valerie S. Amsterdam, Amsterdam and Brandon, New York, NY, for Appellant Hernandez.

Diarmuid White, White & White, New York, NY; Brendan White, on the brief, for Appellant Tunick.

Robert R. Strang, United States Attorney's Office for the Southern District of New York; Mary Jo White, United States Attorney for the Southern District of New York, Jonathan N. Halpern, David Raymond Lewis, Celeste L. Koeleveld, Assistant United States Attorneys, Of Counsel, on the brief, for Appellee.

Present JACOBS, PARKER, and SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be AFFIRMED.

Defendants–Appellants Alan Barton Nachamie, Lydia Martinez, Jose Hernandez, and Edwin Tunick appeal from their judgments of conviction and sentences imposed in the United States District Court for the Southern District of New York (Scheindlin, J.). The superseding indictment filed on February 8, 2000, charged twenty-six counts.

- Count One charged Nachamie, Tunick, Martinez, and Hernandez (together with four other defendants, whose cases were severed for trial, referenced herein as the "doctor defendants") with conspiring, from 1995 through June 1998, to commit health care fraud, mail fraud, make false statements in connection with the delivery of or payment for health care benefits, submit false claims for physicians' services to a health care benefit program, and solicit and receive payments in return for Medicare referrals, in violation of 18 U.S.C. § 371.

- Count Two charged appellants and the doctor defendants with committing health care fraud, in violation of 18 U.S.C. §§ 1347 and 2.

- Counts Three through Six charged appellants and doctor defendants with making false statements in connection with the delivery of or payment for health care benefits, in violation of 18 U.S.C. §§ 1035 and 2.

- Counts Seven through Twenty Six charged twenty instances of false claim submissions for physicians' services to a health care benefit program, in violation of 42 U.S.C. § 1320a–7b(a)(5) and 18 U.S.C. § 2.

Following a jury trial: Nachamie was convicted on all counts; Tunick and Martinez, on Counts One through Three and Six through Twenty–Three; and Hernandez, on Count One. On November 22, 2000, Nachamie was sentenced to 88 months in prison; on December 1, 2000, Martinez was sentenced to 44 months in prison; on December 14, 2000, Hernandez was sentenced to 18 months in prison; and on December 21, 2000, Tunick was sentenced to one year and a day.

On appeal:

- Martinez and Hernandez challenge the sufficiency of the evidence to support their convictions;

- Nachamie and Martinez argue that the district court made several erroneous evidentiary rulings;
- Nachamie argues that the district court erroneously denied his request for a severance;
- Martinez and Nachamie argue that they were deprived of a fair trial by remarks made by the prosecutor in summation;
- Martinez and Tunick complain that the district court improperly charged the jury;
- Nachamie argues that the district court miscalculated his offense level under the United States Sentencing Guidelines ("U.S.S.G.");
- Hernandez argues that the loss amount used to calculate his sentence was clearly erroneous; and
- Martinez contests the district court's failure to depart downward based on her family circumstances and the aberrant nature of her criminal conduct.

## I

A defendant challenging the sufficiency of the evidence shoulders a heavy burden. *See United States v. Dhinsa,* 243 F.3d 635, 648 (2d Cir.2001). The appellate court must consider the evidence in the light most favorable to the government, *see, e.g., United States v. Mulder,* 273 F.3d 91, 109 (2d Cir.2001), and "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *United States v. Guadagna,* 183 F.3d 122, 130 (2d Cir.1999) (internal quotation omitted).

■ Martinez challenges the sufficiency of the evidence to show her knowing and intentional involvement in the submission of false claims for physician's services to a health care benefit program in the period pre-September 1997 (as charged in Counts Six through Eighteen), on the ground that she had no managerial role of any sort at that time.

The following evidence, viewed in the light most favorable to and drawing all reasonable inferences in favor of the government, was sufficient to support a jury verdict that Martinez knew as early as April 1997 that unlicenced and unsupervised foreign medical graduates ("FMGs") visited patients' homes and conducted medically unnecessary tests for which legitimate Medicare reimbursement was not available but was sought anyway through a fraudulent billing operation: (1) beginning in March 1997, Martinez supervised telemarketers who recruited senior citizens on Medicare by using a script that misrepresented, *inter alia,* that Nachamie's program was a "special health program" sponsored by "the federal government" and "funded by medicare"; (2) at the same time, Martinez advised the telemarketers how to "Overcome[ ] the Most Common Objections" from the recruits such as "I already have a doctor" and "I feel fine," despite the fact that Medicare covers medically necessary treatment only, not routine screening tests; (3) four of Nachamie's employees who worked with Martinez at the Queens office with Martinez witnessed physicians arrive at the office and sign patients' charts and encounter forms (these forms, signed by doctor and patient, indicate that a visit was conducted and those procedures that were performed), without first observing patients or consulting with the FMGs who performed the tests on the patients; (4) in May 1997, Martinez supervised FMGs, instructing them (a) to conduct numerous procedures upon first visiting a patient regardless of the necessity for such tests and contrary to the encounter form indi-

cating that tests should be conducted only if "deemed necessary by the examining physician"; (b) to conduct "stress tests" but the procedure she told them to use was not an actual stress test; and (c) to "be supervised by licensed physicians" without providing FMGs with a way to contact physicians (indeed, there was no such contact); (5) in August 1997, only four months after her employment with Nachamie commenced, Martinez fired Renee Caesar and upon learning from the operation's "consultant," Andrew Messana, that Caesar had contacted the FBI, Martinez closed the Queens office and dismissed the FMGs working out of that office; (6) Martinez had many years of employment experience in the medical field, and knew that billing for procedures not medically necessary was illegal; (7) Martinez conceded that some of the tests billed for were not conducted as represented; (8) Martinez's testimony that she was never involved in billing or the preparation of certain medical forms at Nachamie's organization is contradicted by her later testimony that she filled out one such form.

■ Hernandez was convicted on Count One only, and solely with respect to the object of the conspiracy involving the laboratory kickback scheme: i.e., Nachamie's operation sent urine samples to a Key Biscayne Laboratory ("Key Biscayne") in Florida to test for the presence of drugs in exchange for an $80 referral fee per urine test from the laboratory's owner, Edgar Damos Estaco ("Estaco"). Hernandez challenges the sufficiency of the evidence on the ground that "there was no evidence that he solicited an illegal kickback." We conclude that the following evidence, viewed in the appropriate light and drawing all appropriate inferences, is sufficient to support the verdict that Hernandez was involved: (1) after cooperating

witness Estaco told Hernandez in the latter part of 1997 that Estaco would pay $80 per urine sample referred to Key Biscayne for testing, Hernandez introduced Nachamie and other individuals to Estaco to begin such referrals; (2) after several meetings attended by Hernandez, Nachamie and others (captured on audio tape), Estaco agreed to pay Nachamie and Hernandez $80 per urine test referral; (3) Estaco testified that Hernandez introduced Estaco to Nachamie with the purpose of facilitating the kickback scheme; (4) at a meeting concerning the kickback scheme attended by Hernandez, Nachamie, Tunick and Estaco, they accused each other of wearing a recording device, and to prove otherwise, Nachamie, Hernandez and Estaco partially undressed; (5) the government introduced into evidence the checks paid from Key Biscayne to Nachamie, Martinez and Hernandez; and (6) two of Nachamie's employees testified that Estaco entered into a kickback arrangement involving Hernandez.

## II

Nachamie and Martinez challenge various evidentiary rulings made by the district court, which we review for an abuse of discretion. *United States v. Tropeano*, 252 F.3d 653, 657 (2d Cir.2001).

■ Messana (a witness for the government) attributed to Nachamie a racially charged comment. Nachamie's counsel suggested to Messana that the prosecutor had prepared Messana to give that testimony in order to pander to the racial mix of the jury, a suggestion that Messana denied. After Messana stepped down, the government recalled to the stand Agent Brady, the government's case agent and party-representative at trial, who had attended Messana's witness preparation session with the prosecution, and who corroborated Messana's denial. Nachamie

argues that the district court erred in permitting the government to recall Brady because Brady should have been sequestered. However, the sequestration rule (Fed.R.Evid.615(2)) allows a law enforcement official "who has been in charge of an investigation to remain in court despite the fact that he will be a witness." Fed.R.Evid. 615, Advisory Committee Note (citing *United States v. Infanzon,* 235 F.2d 318 (2d Cir.1956)).

■ Nachamie asserts that he was unfairly limited in his re-cross-examination ("re-cross") of Agent Brady. On re-cross, Nachamie asked Agent Brady to name other FBI agents who, like Agent Brady, do not take notes or write reports during witness preparation sessions. The district court cut off this line of questioning. The district court's limitation of Nachamie's re-cross was not unfair and was within the court's discretion. *See United States v. Rosa,* 11 F.3d 315, 335 (2d Cir.1993) ("The scope and extent of cross-examination are generally within the sound discretion of the trial court, and the decision to restrict cross-examination will not be reversed absent an abuse of discretion.") Nachamie's counsel had already brought out the absence of any notes made by Agent Brady at the pretrial interview with Messana, and thus, the district court did not abuse its discretion in curtailing Nachamie's questions on re-cross.

■ Nachamie challenges the district court's denial of his request to recall the government's proffered expert, Dr. Burke, to the stand after Nachamie learned that—inconsistent with Dr. Burke's testimony—a medical malpractice case against Dr. Burke had been settled for $150,000. This ruling was not an abuse of discretion. Nachamie had ample opportunity to cross-examine Dr. Burke, and could have discovered the settlement prior to Nachamie's cross-examination of Dr. Burke. Also, the court's refusal to allow Nachamie to recall Dr. Burke did not prejudice Nachamie: Dr. Burke's expert testimony that the procedures Nachamie and his co-conspirators fraudulently billed to Medicare were not medically necessary was corroborated by other evidence in the record. *See United States v. Vasquez,* 82 F.3d 574, 576 (2d Cir.1996) (even when a court has improperly limited inquiry, reversal is not warranted where the "error was harmless or 'unimportant in relation to everything else the jury considered on the issue' ") (quoting *Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991)).

Martinez challenges the district court's refusal "to order the government to produce for examination" Saverio Senape, a former Nachamie employee who had agreed to cooperate with the government. This claim is frivolous. Martinez knew of Senape and his role in the Nachamie operation, and the government had given defense counsel the name of Senape's lawyer. Martinez apparently made no effort to call Senape as a witness. Martinez argues that *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Confrontation Clause, and the Due Process clause require the government to process Senape for a pretrial interview with Martinez's counsel; to the contrary, it is enough for the government to direct the defense to the relevant witness. *See United States v. Salerno,* 868 F.2d 524, 542 (2d Cir.1989).

■ Martinez claims that the district court erred in limiting the introduction of character witness testimony such as evidence of Martinez's good deeds and charitable works, which demonstrated Martinez's "good will, selflessness, and moral character." Evidence of specific instances of good conduct is admissible when character is an essential element of the charge, but not otherwise. Fed.R.Evid. 405(b).

Martinez's character was not an essential element of any of the charges against her; the district court therefore did not err in limiting evidence of Martinez's charitable works. Even so, the district court did permit some testimony as to specific instances of Martinez's charity toward senior citizens, enabling Martinez to argue that (contrary to the government's allegation) Martinez could not have intended "to take advantage of the elderly." Further, while character witness testimony was limited to charitable works involving the elderly,[1] the court gave Martinez wide leeway to testify about her own good deeds and charitable acts, testimony that was not limited to charity toward the elderly.

Martinez contends that the district court prevented her from explaining on re-direct examination her actions with respect to (1) a sample encounter form that Martinez had completed and (2) a check from Key Biscayne Laboratory to Seniors for Better Health/Lydia Martinez. This is not accurate. More than an hour into the redirect examination, the district court *sua sponte* disallowed a question posed to Martinez concerning the plan "for the New Jersey office as far as office visits or home visits." The court then called a recess, after which re-direct examination continued for another fifteen minutes. During this time, Martinez answered additional questions about the sample encounter form and other topics. Martinez's counsel completed re-direct with five minutes of the allotted time remaining, and could have asked Martinez about the Key Biscayne check. In any event, the district court acted within its discretion in limiting the scope of redirect examination.

III

■ Nachamie challenges the district court's denial of his motion for a severance. Nachamie made this motion near the end of trial, after Martinez had testified in her own defense that she was an unknowing victim in Nachamie's fraudulent scheme. The ground for Nachamie's motion was that Martinez's defense was inconsistent with his own defense that any frauds were committed by employees, without his knowledge.

■ Rule 14 of the Federal Rules of Criminal Procedure provides for severance "[i]f it appears that a defendant ... is prejudiced by a joinder of ... defendants ... for trial together." Fed.R.Crim.P. 14. A trial need not be severed any time codefendants raise conflicting defenses. *Zafiro v. United States,* 506 U.S. 534, 538–39, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *United States v. Haynes,* 16 F.3d 29, 32 (2d Cir. 1994). Indeed, there is a "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro,* 506 U.S. at 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). A defendant challenging the denial of a motion to sever must demonstrate that he was so prejudiced by the joinder that he was denied a constitutionally fair trial and that a "miscarriage of justice" occurred. *United States v. Torres,* 901 F.2d 205, 230 (2d Cir.1990); *United States v. Aulicino,* 44 F.3d 1102, 1117 (2d Cir.1995).

Also, Nachamie has not demonstrated that joinder of the trials denied him a constitutionally fair trial. Nachamie cites testimony by Martinez that "she didn't realize that [Nachamie's] business was submitting false claims to Medicare," and that Nachamie told Martinez about the

---

1. Despite the district court's ruling that character witness testimony was limited to evidence of charitable works involving the elderly, Martinez presented several character witnesses who testified about Martinez's charity beyond that to the elderly. The government did not object to such testimony and the court did not limit it.

kickbacks he was receiving from Key Biscayne. But "[a] defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and [there is] no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant." *Zafiro,* 506 U.S. at 540, 113 S.Ct. 933. Since Martinez could have presented the same testimony at Nachamie's trial had it been severed, Nachamie was not prejudiced. Further, evidence of Nachamie's involvement in the fraudulent scheme was abundant and Martinez's testimony regarding the kickback scheme went to only one of the five objects of the conspiracy charged in Count One.

Finally, even if there had been prejudice, it would have been cured by the district court's instructions to the jury that (1) arguments of counsel are not evidence; (2) the government had to prove each defendant's guilt beyond a reasonable doubt; and (3) the jury had to evaluate the evidence against each defendant on each charge separately.

### IV

▮▮▮ Martinez and Nachamie argue that the prosecutor's comments during summation denied them a fair trial. *See United States v. Locascio,* 6 F.3d 924, 945 (2d Cir.1993). In determining whether reversal is warranted, the court should consider "the severity of the misconduct, the measures adopted to cure it, and the certainty of the conviction in the absence of the misconduct." *United States v. Shareef,* 190 F.3d 71, 78 (2d Cir.1999). The objectionable remarks must be considered in light of the entire trial. *United States v. Espinal,* 981 F.2d 664, 666 (2d Cir.1992).

Martinez challenges the prosecutor's remarks about (1) a money order for $620 drawn from Coconut Grove Bank in Flori-

da and payable to "Seniors for Better Health, Inc./Lydia Martinez," and (2) two corporate checks drawn on Key Biscayne's account and payable to "Senior's For Better Health," with Martinez's name written on the payee line. Estaco testified that the corporate checks were kickbacks due Nachamie and his co-conspirators for referring urine tests to Key Biscayne. He also testified that upon receipt of the checks, Martinez asked Estaco to send her a cashier's check instead, without her name on it. Estaco did this and Martinez endorsed the cashier's check.

Martinez argues that the prosecutor's characterization (during rebuttal summation) of the bank money order as a "cashier's check"—as Estaco had called it—was unfair. She also finds unfair the prosecutor's failure to comment on the fact that both the checks and money order were made out to the same payee, despite Estaco's testimony that Martinez asked him to reissue the checks but not in Martinez's name.

This conduct did not deny Martinez a fair trial. *Locascio,* 6 F.3d at 945. The distinction between a cashier's check and a money order, for purposes of Martinez's conviction, is essentially immaterial. As for the prosecutor's failure to point out that the corporate checks and money order were issued in the same name, this point was ascertainable from the evidence, and the government need not point out inconsistencies between the evidence and Estaco's testimony.

We also reject Martinez's complaint that the prosecutor improperly referenced a sample encounter form as a "smoking gun" and mischaracterized Martinez's testimony. The prosecutor argued that the same encounter form, entitled "Sample New Pts Checkup," was evidence of Martinez's knowing involvement in the fraudulent bill-

ing scheme because the form, which bore Martinez's handwriting, indicated that particular procedures had been conducted at an office visit, whereas Martinez acknowledged that some procedures checked off on the form were not performed at an office, or were not performed at all. The government characterized the form as "a smoking document" based on its view that as supervisor of the FMGs, Martinez should have known that whatever tests were performed were not conducted in the office. While Martinez would have preferred the jury to accept her version of the story, that "[t]he form was prepared merely as one to be illustrative of what a *legitimate* completed form would look like," the prosecution was entitled to argue its version and urge the jury to adopt it.

Nachamie contests the prosecutor's comment that the defendants did not care whether the elderly victims of the fraudulent scheme lived or died, an observation apparently made to counter Nachamie's contention that the purpose of the business was to provide medical care for senior citizens. Given the overwhelming evidence of business purposes, there was no error. In any event, any prejudice would have been counteracted by the district court's later instruction that the jury disregard any references in closing arguments to "living or dying."

V

 Martinez and Tunick challenge portions of the jury charge. Although our review of the charge is *de novo, United States v. Han,* 230 F.3d 560, 565 (2d Cir. 2000), an appellant challenging an instruction must establish both (i) that he requested a charge that "accurately represented the law in every respect" and (ii) that the charge given misled the jury as to the correct legal standard, did not adequately inform the jury on the law, and

caused the defendant prejudice. *United States v. Pujana–Mena,* 949 F.2d 24, 27 (2d Cir.1991); *United States v. Abelis,* 146 F.3d 73, 82–83 (2d Cir.1998). Reversal is not warranted if the error was harmless. *United States v. Amuso,* 21 F.3d 1251, 1260–61 (2d Cir.1994).

 Martinez and Tunick both cite the conscious avoidance charge, "which permits a jury to find that a defendant had culpable knowledge of a [disputed] fact if the evidence shows that the defendant intentionally avoided confirming the fact," *United States v. Ferrarini,* 219 F.3d 145, 154 (2d Cir.2000), and argue that the instruction was improper because the theory was not advanced by the prosecution. The flaw in this argument is that "[i]t is not required that the evidence supporting such an instruction be introduced by the government rather than by the defense." *United States v. Bautista,* 252 F.3d 141, 147 (2d Cir.2001). The instruction was supportable in this case because Martinez and Tunick both claimed that they were unaware of the fraud and a rational juror could conclude from this record that they were "aware of a high probability [of the fact in dispute] and consciously avoided confirming that fact." *Ferrarini,* 219 F.3d at 154 (internal quotation omitted).

Tunick's deliberate ignorance can be inferred from testimony that during a meeting in September 1997, Tunick asked Messana "what was going on" because Tunick heard "rumblings and different things happening with FBI agents and people sitting in cars." Messana responded that "it's a hot topic and a hot issue and it's a problem," and Tunick replied, "Well, if there is fraud going on, that is Alan's [Nachamie's] department. I only deposit money." This, combined with Tunick's defense that he lacked knowledge of the fraudulent activity partly because he worked in Florida,

supports a conscious avoidance charge. *Id.* at 154.

As to Martinez, her counsel stated that Martinez's defense was based on "good faith," and argued to the jury that "you are not responsible for [fraud] because you are ignorant of it." Throughout the trial Martinez disclaimed knowledge of the fraudulent scheme; as her counsel asked the jury in closing, if Martinez knew there was a fraudulent scheme, "wouldn't [she] get the heck out of there as fast as [she] could?" This defense sufficiently justified a conscious avoidance instruction.

Martinez also objects to the district court's instruction on the aiding and abetting charge. We have reviewed this claim and find it lacking merit.

## VI

 Nachamie challenges the calculation of his offense level under the United States Sentencing Guidelines. The U.S. Probation Office recommended: [1] a base offense level of six pursuant to § 2F1.1(a); [2] a 13 level increase pursuant to § 2F1.1(b)(1)(N) because Nachamie's fraud caused an actual loss of $4,292,555.90; [3] a two-level increase pursuant to § 2F1.1(b)(2) because the offense involved "more than minimal planning"; [4] a two-level increase pursuant to § 2F1.1(b)(4)(A) because Nachamie misrepresented himself as acting on behalf of a government agency; and [5] a four-level increase pursuant to § 3B1.1(a) because of Nachamie's leadership role. This yielded an adjusted offense level of 27 and a guideline range of 70 to 87 months in prison.

The government raised two objections: [1] that the calculated loss should be based on intended loss rather than actual loss; and [2] that Nachamie's offense level should be enhanced two levels because he "knew or should have known that a victim of the offense was a vulnerable victim."

U.S.S.G. § 3A1.1(b)(1). The district court agreed, and also imposed the four-level enhancement pursuant to § 3B1.1(a) because Nachamie was an organizer and leader of "criminal activity that involved five or more participants or was otherwise expensive [sic]." Nachamie did not object to either of these enhancements but argues on appeal that their imposition constituted impermissible "double counting."

On appeal, we "accept the findings of fact of the district court unless they are clearly erroneous and ... [we] give due deference to the district court's application of the guidelines to the facts." *United States v. Molina,* 106 F.3d 1118, 1121 (2d Cir.1997) (citing 18 U.S.C. § 3742(e)). A defendant challenging the application of the guidelines to the facts undertakes a heavy burden. *See, e.g., United States v. Beverly,* 5 F.3d 633, 642 (2d Cir.1993). Because Nachamie did not raise the "double counting" argument below, it is reviewed for plain error. *See United States v. Keppler,* 2 F.3d 21, 23–24 (2d Cir.1993); Fed.R.Crim.P. 52(b).

 Enhancement of a sentence for both more than minimal planning and role in the offense does not amount to double-counting unless the finding as to planning is based solely on the role. *See United States v. O'Neil,* 118 F.3d 65, 76 (2d Cir. 1997); *United States v. Greenfield,* 44 F.3d 1141, 1146 n. 3 (2d Cir.1995). Nachamie's enhancement for more than minimal planning was based on a number of facts (other than his leadership role): Nachamie established at least six offices; obtained lists of senior citizens to target; wrote the script used by the telemarketers to recruit patients; hired FMGs to visit senior citizens; arranged for fraudulent forms and reports to be prepared and submitted to Medicare; submitted forms to Medicare electronically to avoid having to obtain signatures; and

established bank accounts to deposit money. The enhancements did not constitute double counting and were permissible.

■■■■ Nachamie also contests the two-level enhancement premised on the vulnerability of the victims. The district court found: that "the elderly and poor patients ... may have been dissuaded from seeking medical attention in the belief that they had been screened for major and threatening diseases"; and that Nachamie "very cynical[ly] ... prey[ed] on the least sophisticated of the elderly population because he believed they would never question the services they were provided free of charge ..." This finding is supported by Nachamie's tape-recorded admissions that he "indoctrinated" the senior citizens and their family members and real doctors rarely intervened; that "all I've been doing is black people"; and that he "deal[t] in the black community ... [because] dealing in our own ... everybody's got a son, a nephew, and an uncle who's a doctor." A "vulnerable victim" is one "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, comment (n.2). The patients fit this description, and may be considered as victims even though all of the economic harm was suffered by the government. *See United States v. Echevarria*, 33 F.3d 175, 180–81 (2d Cir.1994).

■■■■ Nachamie challenges the calculation of the amount of loss, arguing that the district court erred by focusing on intended loss rather than actual loss. Loss is "the value of the money, property, or services unlawfully taken," and "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1(b)(1); § 2F1.1, comment (n.8). "The district court need only make a reasonable estimate of the loss, given the available information," *United States v. Carboni*, 204 F.3d 39, 46 (2d Cir.2000) (internal quotation and marks omitted), and the calculation of loss amount is made under the preponderance of the evidence standard. *See United States v. Watts*, 519 U.S. 148, 156, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997).

■■■■ The district court's estimate of intended loss was supported by a preponderance of the evidence. Nachamie and his codefendants submitted in excess of $12 million in claims to Medicare. The court discounted this amount by almost one-half to account for billing in excess of reimbursable amounts, beneficiary co-payments, and duplicate bills. Nachamie protests that some of his claims to Medicare were legitimate and that the district court's calculation of loss involved "guesswork"; but there is no evidence that any of the claims submitted by Nachamie satisfied Medicare requirements. The court thus made a "reasonable estimate" of the amount of the loss. *Carboni*, 204 F.3d at 46.

## VII

■■■■ Hernandez charges sentencing error in the calculation of the loss amount. Since Hernandez was convicted on Count One only, he was held accountable only for the intended loss stemming from the kickback scheme and two other similar arrangements he had with health service "providers" other than Nachamie. With respect to the loss attributable to the Nachamie kickback scheme, the court found that Hernandez was responsible for the entire amount to be billed to Medicare ($137,772) because Hernandez knew that the urine tests were medically unnecessary and/or fraudulent. Hernandez argues that

the district court should have considered only the amount Hernandez received in kickbacks because he did not know that the tests were fraudulent. The district court rejected this argument at sentencing, and because we see sufficient evidence that Hernandez knew the tests were not medically necessary, we affirm the district court's calculation of loss attributable to Hernandez.

## VIII

■ With respect to Martinez, the district court departed downward three levels on the basis that the loss overstated the seriousness of her offense. Martinez argues that a further departure was warranted because of family circumstances and aberrant behavior. A district court's failure to downwardly depart "is ordinarily not reviewable, unless the refusal is due to an erroneous interpretation of law or an erroneous view of the extent of its departure authority." *United States v. Aponte*, 235 F.3d 802, 803 (2d Cir.2000) (internal quotation marks and citation omitted). None of these exceptions apply, and Martinez does not argue otherwise. We therefore reject this claim.

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.